484 So.2d 110 (1986)
Mrs. Jean HALPHEN
v.
JOHNS-MANVILLE SALES CORPORATION.
No. 85-CQ-0455.
Supreme Court of Louisiana.
February 24, 1986.
Rehearing Denied April 10, 1986.
*112 Stephen W. Hanks, Helm, Pletcher & Hogan, Houston, Tex., Ronald Motley, Blatt & Fales, Barnwell, S.C., Jack Martzell, Martzell & Thomas, New Orleans, for plaintiff-appellee.
John G. Bissell, Michael L. Baker, Strong, Pipkin, Nelson & Bissell, Beaumont, Tex., John J. Weigel, Thomas M. Nosewicz, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellant.
Robert S. Rooth, L. Havard Scott, III, Joan G. Quinters, Jonathan C. McCall, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for amicus curiae.
DENNIS, Justice.
A widow sued an asbestos products manufacturer in a United States District Court for the wrongful death of her husband caused by his exposure to asbestos.[1] She invoked Louisiana's strict products liability tort law under the court's diversity jurisdiction. Before trial the District Court excluded all evidence of whether the manufacturer knew or could have known of the dangers of asbestos on the grounds that such evidence is irrelevent to whether the product is unreasonably dangerous. After a trial, a jury found that the manufacturer's asbestos products were unreasonably dangerous and had been a proximate cause of the deceased's death. The District Court entered judgment awarding damages *113 to the widow for her husband's illness and wrongful death.
The manufacturer appealed to the United States Court of Appeals. A divided three judge panel of that court affirmed. Halphen v. Johns-Manville Sales Corp., 737 F.2d 462 (5th Cir.1984). Acting en banc, however, the Court of Appeals recalled its decision and certified to us the following question:

Question Certified
In a strict products liability case, may a manufacturer be held liable for injuries caused by an unreasonably dangerous product if the manufacturer establishes that it did not know and reasonably could not have known of the inherent danger posed by its product? Halphen v. Johns-Manville Sales Corp., 752 F.2d 124, 755 F.2d at 393 (5th Cir.1985) (en banc).

Response to Certified Question
Having granted certification, we respond by (1) stating the legal precepts which govern the issues raised by the certified question, (2) answering the question specifically, and (3) elaborating the reasons for the precepts and answers.

1. Legal Precepts
There is general agreement upon the most basic principles of strict tort products liability. In order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985); Hebert v. Brazzel, 403 So.2d 1242 (La.1981); DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981); Hunt v. City Stores, 387 So.2d 585 (La. 1980); Chappuis v. Sears, Roebuck & Co., 358 So.2d 926 (La.1978); Weber v. Fidelity & Casualty Ins. Co. of New York, 259 La. 599, 250 So.2d 754 (1971).
As strict products liability in tort was originally conceived, the manufacturer's ability to know of the danger of its product at the time of sale was immaterial. Under pure strict liability theory, the product is on trial, not the knowledge or conduct of the manufacturer. Subsequently, additional products liability theories developed which permit the plaintiff to recover when the manufacturer fails to give adequate warning or adopt an alternate design to make the product safer. Under these later theories, the knowledge available to the manufacturer when it designs, manufactures, and markets the product may be material. Accordingly, whether the knowledge of the danger in a product is material, relevant, or admissible depends on the particular theory of recovery under which the plaintiff tries his case.
An essential element of a plaintiff's case under each strict products liability theory of recovery is proof that the defendant's product was unreasonably dangerous to normal use. The method of proof of this element varies under each theory, however, and this is why the knowledge available to the manufacturer is material only with regard to certain theories. Because there is disagreement among jurisdictions as to the nature, the classification, and even the existence of some grounds of recovery, we will set forth the elements of each strict liability theory recognized by this court in order to explain whether knowledge available to the manufacturer is material under each theory.
In describing the theories of recovery, we use the classifications of unreasonably dangerous products recognized by most courts. Additionally, we recognize products which are "unreasonably dangerous per se" as a separate class of defective products. For products in this category liability may be imposed solely on the basis of the intrinsic characteristics of the product irrespective of the manufacturer's intent, knowledge or conduct. This category should be acknowledged as giving rise to *114 the purest form of strict liability and clearly distinguished from other theories in which the manufacturer's knowledge or conduct is an issue.
A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product.[2]Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); cf. Entrevia v. Hood, 427 So.2d 1146 (La. 1983); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133, 140 (1971). See Elmore v. Owens-Illinois, Inc., 673 S.W.2d 434 (Mo.1984); Turner v. General Motors Corp., 584 S.W.2d 844 (Tex.1979); Carter v. Johns-Manville Sales Corp., 557 F.Supp. 1317 (E.D. Tex.1983); Prosser and Keeton on Torts, p. 699 (5th Ed. 1984); Keeton, Torts, Annual Survey of Texas Law, 1981, 35 Sw. L.J. 1, 9 (1981); Keeton, The Meaning of Defective in Products Liability Law, 45 Mo. L.Rev. 579, 592 (1980). This theory considers the product's danger-in-fact, not whether the manufacturer perceived or could have perceived the danger, because the theory's purpose is to evaluate the product itself, not the manufacturer's conduct. Likewise, the benefits are those actually found to flow from the use of the product, rather than as perceived at the time the product was designed and marketed. The fact that a risk or hazard related to the use of a product was not discoverable under existing technology or that the benefits appeared greater than they actually were are both irrelevant. Hunt v. City Stores, Inc., supra; Keeton, The Meaning of Defect, supra, p. 595; Keeton, Products LiabilityInadequacy of Information, 48 Tex.L.Rev. 398, 407-408 (1970). Under this theory, the plaintiff is not entitled to impugn the conduct of the manufacturer for its failure to adopt an alternative design or affix a warning or instruction to the product. A warning or other feature actually incorporated in the product when it leaves the manufacturer's control, however, may reduce the danger-in-fact. If a plaintiff proves that the product is unreasonably dangerous per se, it is not material that the case could have been tried as a design defect case or other type defect case.
A product is unreasonably dangerous in construction or composition if at the time it leaves the control of its manufacturer it contains an unintended abnormality or condition which makes the product more dangerous than it was designed to be. See Weber v. Fidelity & Casualty Ins. Co., N.Y., supra (cattle dip arsenic content exceeded intended specifications); MacPherson v. Buick Motors, 217 N.Y. 382, 111 N.E. 1050 (1916); Prosser and Keeton on Torts, p. 695 (5th ed. 1984); Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. (1965); Keeton, The Meaning of Defect, supra, p. 586. A manufacturer or supplier who sells a product with a construction or composition flaw is subject to liability without proof that there was any negligence on its part in creating or failing to discover the flaw. Evidence of what knowledge was available to the manufacturer has no relevance in such cases because the product, by definition, failed to conform to the manufacturer's own standards. 1A Frumer & Friedman, Products Liability 12.07[4][b][ii].
Although a product is not unreasonably dangerous per se or flawed by a construction defect, it may still be an unreasonably dangerous product if the manufacturer fails to adequately warn about a danger related to the way the product is *115 designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. Winterrowd v. The Travelers Indemnity Co., 462 So.2d 639 (La.1985); Hebert v. Brazzel, 403 So.2d 1242 (La.1981); Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978); cf. Rey v. Cuccia, 298 So.2d 840 (La.1974). In performing this duty a manufacturer is held to the knowledge and skill of an expert. It must keep abreast of scientific knowledge, discoveries, and advances and is presumed to know what is imparted thereby. See Keeton, Product Liability Problems Pertaining to Proof of Negligence, 19 Sw.L.J. 26, 30-33 (1965). A manufacturer also has a duty to test and inspect its product, and the extent of research and experiment must be commensurate with the dangers involved. See Dartez v. Fibreboard Corp., 765 F.2d 456 (5th Cir.1985); Gideon v. Johns-Manville, 761 F.2d 1129 (5th Cir.1985); Borel v. Fibreboard Paper Products Corporation, 493 F.2d 1076, 1089 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); 1 Frumer & Freedman, Products Liability § 6.01[1] & [2]; Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816, 853 (1962). Under the failure to warn theory evidence as to the knowledge and skill of an expert may be admissible in determining whether the manufacturer breached its duty.
A product may be unreasonably dangerous because of its design for any one of three reasons: (1) A reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. This is the same danger-utility test applied in determining whether a product is unreasonably dangerous per se. Keeton, The Meaning of Defect, supra, p. 592; Cf. Hebert v. Brazzel, supra. This first reason for concluding that a design is defective is governed by the same criteria for deciding whether a product is unreasonably dangerous per se. The overlap in categories makes it unnecessary to decide whether a product's defect is one of design or of another kind if the product is proven to be unreasonably dangerous per se. (2) Although balancing under the risk-utility test leads to the conclusion that the product is not unreasonably dangerous per se, alternative products were available to serve the same needs or desires with less risk of harm; or, (3) Although the utility of the product outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences. See Prosser & Keeton on Torts, p. 699 (5th Ed.1984); Keeton Torts, Annual Survey of Texas Law, 35 Sw.L.J. 1, 9 (1981); Keeton, Products Liability Design Hazards and the Meaning of Defect, 10 Cum.L.Rev. 293, 306 (1976); Wade, on the Nature of Tort Liability for Products, 44 Miss. L.J. 825, 837 (1973). In regard to the failure to use alternative products or designs, as in the duty to warn, the standard of knowledge, skill and care is that of an expert, including the duty to test, inspect, research and experiment commensurate with the danger. Brady v. Melody Homes Mfr., 121 Ariz. 253, 589 P.2d 896 (1979); 2 Frumer & Friedman, supra § 16A [4][f][iv][C]. Accordingly, evidence as to whether the manufacturer, held to the standard and skill of an expert, could know of and feasibly avoid the danger is admissible under a theory of recovery based on alleged alternative designs or alternative products. Such evidence is not admissible, however, in a suit based on the first design defect theory, which is governed by the same criteria as proof that a product is unreasonably dangerous per se.
The plaintiff may elect to try his case upon any or all of the theories of recovery. If he decides to pursue more than one, he is entitled to an instruction that evidence which is admissible exclusively under one theory may be considered only for that purpose.

2. Answer to Certified Question
In a strict products liability case, if the plaintiff proves that the product was *116 unreasonably dangerous per se (whether because of defective design or another kind of defect) or unreasonably dangerous in construction or composition, a manufacturer may be held liable for injuries caused by an unreasonably dangerous product, although the manufacturer did not know and reasonably could not have known of the danger.

3. Reasons for Precepts and Answer
Strict products liability evolved from principles of public order, and its contours should be shaped according to the purposes it serves within the framework of our civil code. See Bell v. Jet Wheel Blast, 462 So.2d 166, 170 (La.1985); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971); Planiol, Civil Law Treatise, Vol. 2, Part 1, Nos. 806, 807 (LSLI translation 1939). Accordingly, we have relied on analogy to the codal principle of legal fault or strict liability as well as empirical elements in reaching our conclusions.

A. Codal Principle of Legal Fault or Strict Liability
A principle of legal fault or strict liability underlies articles 2317-22 of the Civil Code: When harm results from the conduct of a person or defect of a thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1975).
The strict liability or legal fault thus arising from our code provisions is more than a rebuttable presumption of negligence. The owner or guardian cannot be absolved from his strict liability even if he proves that he did not know and could not have known of the unreasonable risk of harm to others. See Loescher v. Parr, supra. (A tree owner is responsible for damage caused by the tree's fall although he could not reasonably have known of its internally diseased condition. C.C. Article 2317); Holland v. Buckley, 305 So.2d. 113 (La.1974). (A dog owner is strictly liable for injury done by the animal's first bite even if he could not have known of the dog's harm-causing characteristic. C.C. 2321); Turner v. Bucher, 308 So.2d 270 (La.1975). (A parent is strictly liable for damage caused by his child's defective conduct regardless of the fact that the parent could not have prevented the child's act. C.C. 2318); Olsen v. Shell Oil Corp., 365 So.2d 1285 (La.1979) (A building owner is strictly liable for damage caused by the defective condition of the premises regardless of whether he is ignorant of the condition and reasonably could not have detected it. C.C. Art. 2322).
The underlying reason for the owner's or guardian's strict liability is that the person to whom society allots the supervision, care or guardianship (custody) of the risk-creating person or thing should bear the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. Loescher v. Parr, supra; See Olsen v. Shell Oil Corp., supra n. 13; Starck, The Foundation of Delictual Liability in Contemporary French Law, 48 Tul.L.Rev. 1043 (1975); See Comment, Article 2322 and the Liability of the Owner of an Immovable, 42 Tul.L.Rev. 178 (1967).
The principle of strict products liability is analogous to the principle of legal fault or strict liability underlying civil code articles 2317-22. The manufacturer who places an unreasonably dangerous product on the market that causes injury to innocent victims is subject to strict liability even if he has not been guilty of any negligence. The liability arises from his legal relationship to *117 the product and is based on the product's unreasonably dangerous condition. One of the reasons for strict products liability is similar to that underlying the codal strict liability: The person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of its defective condition. Although the manufacturer usually does not have custody of the product when the injury occurs, in order for strict product liability to arise, the plaintiff must prove that the product's unreasonably dangerous condition arose or existed while it was in the manufacturer's control, that the condition existed at the time the product left the control of the manufacturer, and that the product reached the user in substantially that same defective condition. Another underlying reason for strict products liability affords grounds for holding the manufacturer even more strictly liable than the owner or custodian for damage caused by his risk-creating product: Manufacturers typically are better able than owners or custodians to spread the cost of strict liability through pricing and liability insurance.
Because of the close resemblance between the two forms of strict liability and the reasons for them, reliance on analogy to the civil code indicates that the manufacturer who places an unreasonably dangerous product on the market that causes injury to innocent victims should not be permitted to escape liability by showing that he did not know and could not have known of the danger. Otherwise, the liability of a manufacturer who distributes large numbers of unreasonably dangerous products causing multiple injuries and deaths would be less strict than that of an ordinary homeowner for the act or defect of his child, animal or tree.
An injured person cannot recover under the codal theory of strict liability if he fails to prove there was an unreasonable risk of injury inherent in the thing which caused his damage. Failing in his attempt to prove a vice in the thing, the injured person cannot rely on strict liability but must pursue a theory of recovery instead which requires him to impugn the conduct of the defendant. Analogy to the product liability field indicates, therefore, that an injured consumer who fails to prove that the product is unreasonably dangerous per se or has a construction defect must pursue a less strict theory of recovery which impugns the conduct of the manufacturer, such as an action for failure to warn or for failure to adopt an alternative design.
The parties urge contradictory arguments based on different parts of this court's opinion in Weber v. Fidelity & Casualty Ins. Co. of New York, supra. Plaintiff contends that one passage in that opinion indicates that the manufacturer is absolutely and conclusively presumed to know of the defects in its products under all theories of products liability recovery, including the failure to warn theory. Defendant argues that another passage imposes a general requirement that the particular danger which results in the user's injury must have been foreseeable by the manufacturer for it to be held strictly liable. But, in Weber the manufacturer was held liable under a theory that the product was unreasonably dangerous because of a manufacturing flaw or construction defect, viz., an excessive amount of arsenic in cattle dip not made in accordance with the producer's intended specifications. Thus, the difficult issues presented by scientifically unknowable dangers or liability for failure to warn were not raised, and we do not attribute to the Weber court any intention to decide these issues prematurely.
Even if we were to agree with one of the parties' interpretations, we would still answer the certified question as we have. Weber is this court's landmark opinion on strict products liability, and we continue to be guided by its basic holding and its spirit. Nevertheless, this court has viewed strict products liability as an instrument of public order based on both codal principles and empirical considerations, not as a purely judicial creation. Accordingly, the principle of strict liability has developed since *118 Weber, and its shape will continue to be molded by its purpose within our codal framework. See, e.g., Bell v. Jet Wheel Blast, supra; Hunt v. City Stores, Inc., supra; Chappuis v. Sears, Roebuck & Co., supra; cf. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Entrevia v. Hood, supra.

B. Empirical Elements
Strict products liability and accident law in general pursue four primary goals: (1) reduction of the total cost of accidents by deterring activity causing accidents, (2) reduction of the societal cost of accidents by spreading the loss among large numbers, (3) reducing the cost of administering accident cases, and (4) achieving these goals by methods consistent with justice. Since these goals are not fully consistent with one another, the overall aim is to strive for the best combination of cost reduction in all these categories in a just way. See Bell v. Jet Wheel Blast, supra; DeBattista v. Argonaut-Southwest Ins. Co., supra; Turner v. NOPSI, 476 So.2d 800, 806 (La.1985) (Concurring opinion); G. Calabresi, The Costs of Accidents, (Yale University 1979).
To further these goals within the framework of our civil code, we have concluded that as between an innocent consumer injured by a product which is unreasonably dangerous per se, i.e., too dangerous to be placed on the market, and the manufacturer who puts the product into commerce without being aware or able to know of its danger, the manufacturer must bear the cost of the damage caused by its product. On the other hand, if the consumer fails to prove that the product is unreasonably dangerous per se and seeks to prove his case by impugning the manufacturer's conduct, e.g., by contending that the manufacturer failed to warn or to adopt feasible alternative designs, in fairness the manufacturer should be permitted to introduce evidence and present argument as to the standard of knowledge and conduct by which its conduct is to be judged.
The scientific inability to avoid occasional flaws in products due to miscarriages in the construction process has never altered the fact that an impure or flawed product is defective if the product proves to be more dangerous than it was intended to be. Prosser & Keeton on Torts, p. 700 (5th ed. 1984); 1A Frumer & Friedman § 12.07[4][6][i]. Similarly, when a plaintiff proves that a product is bad and defective because its utility is outweighed by its danger-in-fact, i.e., unreasonably dangerous per se, and the plaintiff proves this theory of recovery without impugning the conduct of the manufacturer, the producer should be held strictly liable regardless of scientific inability to know or to avoid the danger.
On balance, a rule of law requiring the manufacturer to assume the cost of accidents caused by products which are unreasonably dangerous per se, regardless of whether the danger was foreseeable, will provide an effective incentive to eliminate all possible dangers before putting products on the market. Cf. Bell v. Jet Wheel Blast, supra; Beshada v. Johns-Manville, 90 N.J. 191, 447 A.2d 539, 547-8 (1982). Moreover, any discouragement to produce new products or to discover safety improvements will be mitigated by the manufacturer's ability to defend failure to warn cases, alternative design cases and alternative product cases on the basis of scientific unknowability and inability. We conclude that recognizing an unreasonably dangerous per se category as a form of "pure" strict liability along with construction or manufacturing defects will provide even greater incentives to produce safe products.
Reducing the societal cost of accidents by spreading the loss among large groups would not be promoted by leaving part of the cost of accidents, diseases and deaths caused by unreasonably dangerous products on consumers. Insurance specifically designed to cover such losses would be unavailable to consumers as a practical matter. Of course, some losses from scientifically unknowable dangers may prove to be uninsurable for producers also. Manufacturers as a class, however, are still in a better position than consumers to analyze *119 and take action to avoid the risk, to negotiate for broader insurance coverage, and to pass losses on in the form of price increases. Furthermore, the rule we have adopted does not prevent the manufacturer from introducing evidence of scientific knowledge, or the lack thereof, in cases where such knowledge is material, such as in duty-to-warn cases. If the cost of accidents caused by products which are unreasonably dangerous per se and are defective because of construction flaws is placed on manufacturers, a much greater portion of the cost of such accidents may be spread among consumers and manufacturers rather than placed on individual accident victims.
The costs of administering the unreasonably dangerous per se category of products liability cases will be reduced by eliminating litigation over the date when a product's danger became scientifically knowable. In unreasonably dangerous per se cases, as in construction defect cases now, the parties should not be forced to produce experts in the history of science and technology to speculate, and possibly confuse jurors, as to what knowledge was available and what improvements were feasible in a given year. Beshada, 90 N.J. at 207-8, 447 A.2d at 548; Keeton, Products Liability-Inadequacy of Information, 481 Tex.L.Rev. 398, 408-09 (1920); See Wade, On the Effect in Product Liability of Knowledge Unavailable Prior to Marketing, 58 N.Y.U.L. Rev. 734, 754 (1983).
Further, a sense of justice also requires that a manufacturer not be permitted to subsidize its production of a product which is unreasonably dangerous per se at the expense of innocent accident victims. Just as our civil code requires that a custodian of a dangerous thing compensate a victim for the unforeseen harm it causes, so should a manufacturer bear the unforeseen costs that its product inflicts on the helpless user. Moreover, great injustice will result if a manufacturer who knew that a product was unreasonably dangerous per se before it was marketed escapes liability because the plaintiff cannot carry the difficult burden of proving when scientific knowledge was available to the manufacturer. See Wade, supra at 756. Finally, equality in treatment of like cases which is at the heart of our received notions of justice demands that the manufacturer of a product which is unreasonably dangerous per se should not be allowed a defense which is unavailable to the maker of a product that happens to have a construction flaw, or to the custodian of an animal, child or thing. Each of these defendants is strictly liable in tort for injuries caused by the product, person or thing for which he is responsible, even though the defect or dangerous characteristic was not discoverable prior to the time of the injury. Justice and consistency dictate that the manufacturer of a product that is unreasonably dangerous per se be treated in the same manner.

Conclusion
Accordingly, we answer the certified question as set forth in this opinion. Pursuant to Rule XII, Supreme Court of Louisiana, the judgment rendered by this court upon the question certified shall be sent by the clerk of this court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.
CERTIFIED QUESTION ANSWERED.
WATSON, J., concurs and assigns reasons.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents for reasons assigned by MARCUS, J.
WATSON, Justice, concurring.
A product is unreasonably dangerous or it is not. A balancing test is used to make the determination, weighing the probability and magnitude of the risk against the utility of the thing. The inability of a defendant to know or prevent the risk is not a defense in a strict liability case. Hunt v. City Stores, Inc., 387 So.2d 585 (La., 1980).
The new classification of "unreasonably dangerous per se" products shifts the focus of inquiry from the true purpose of the *120 balancing test which is to determine whether the danger presented by a product is reasonable or unreasonable. Thus to some extent, the majority fails to squarely answer the certified question.[1] I would answer the question as posed in the affirmative.
I respectfully concur.
MARCUS, Justice (dissenting).
The certified question by the United States Court of Appeals for the Fifth Circuit is as follows:
In a strict products liability case, may a manufacturer be held liable for injuries caused by an unreasonably dangerous product if the manufacturer establishes that it did not know and reasonably could not have known of the inherent danger posed by its product?
Included in the certificate is a statement of facts submitted jointly by the parties as directed by the Fifth Circuit, showing the nature of the cause and the circumstances out of which the question of law arises:
This is a strict products liability action for damages from wrongful death between Emma Jean Halphen, Plaintiff, and Johns-Manville Sales Corporation, Defendant, which was tried in the United States District Court for the Western District of Louisiana in Lake Charles, in January, 1982.
Plaintiff's husband, Samuel Halphen, died during the pendency of the lawsuit from a malignant pleural mesothelioma, a cancer of the lining of the lung. Plaintiff alleged that her husband had been exposed to asbestos-containing products sold by Johns-Manville, while working at a shipyard in Orange, Texas in 1945, and at various times during his career as a serviceman in the Air Force.
The jury found that there was a Johns-Manville product involved which was unreasonably dangerous to normal use under Louisiana standards of product liability, and that such exposure was a proximate cause of his death.
The District Court ruled prior to trial that a manufacturer is conclusively presumed to know of the dangers in the products it sells, whether or not it has or could have acquired actual knowledge about the product's dangers; and excluded all evidence from both sides of whether Johns-Manville knew or could have reasonably anticipated that the harm sustained could result from exposure to its product.
Strict products liability in Louisiana arises under La.Civ.Code art. 2315 which provides that a person whose fault causes damage to another is obliged to repair it. In defining "fault" for purposes of strict products liability, in Weber v. Fidelity & Casualty Ins. Co. of N.Y., Inc., 259 La. 599, 250 So.2d 754 (1971), this court held that a manufacturer is liable to any person who sustains an injury caused by a defect in the design, composition or manufacturer of its product, if the injury might reasonably have been anticipated. We further held that the plaintiff has the burden of proving that the product is "defective," i.e., "unreasonably dangerous to normal use," and that his injuries were caused by the defect. Even if a product is not defective in design or manufacture, it is "defective" for purposes of strict products liability if it is dangerous to an extent beyond that which would be contemplated by an ordinary consumer. DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981); Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978), citing Weber, supra.
Once a product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the manufacturer. Weber, supra. Instead, in a strict products liability case, the plaintiff is entitled to a presumption that the manufacturer knew or should have know of the defects in its product, even if the manufacturer did not have actual *121 knowledge of them. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). The manufacturer's presumed knowledge gives rise to a duty on its part to protect persons against foreseeable risks of injury whether by taking the product off the market or by giving an adequate warning against improper use, etc. If the manufacturer breaches its duty by failing to take appropriate and adequate action, then the manufacturer is strictly liable.[1]
The presumption that the manufacturer knew or should have known of the defects in its product is what distinguishes all strict products liability cases (design, manufacture and warning) from negligence cases. The reason for allowing the presumption is found in the very purpose of strict products liability which is to relieve the claimant from problems of proof inherent in pursuing negligence and warranty remedies and thereby insure that the costs of injuries are borne by those responsible for putting such products on the market rather than by the injured persons who are powerless to protect themselves. DeBattista, supra.
Nonetheless, strict products liability in Louisiana was never intended to make a manufacturer an insurer of its products. See DeBattista, supra. Hence, in our prior jurisprudence, we have implicitly recognized that a manufacturer is presumed to have that degree of knowledge of its product's dangerousness that was discoverable using prevailing science and research techniques under the state of the art. See Winterrowd v. The Travelers Indemnity Co., 462 So.2d 639 (La.1985); DeBattista, supra; Chappuis, supra.
To impose liability on a manufacturer when the defects in its product were not discoverable under the state of the art would require a presumption that the manufacturer knew what it could not have known. Such a presumption would be fundamentally unfair and would impose liability on a manufacturer who was powerless to prevent the injury. In Weber, this court held only that once the plaintiff proved the product was unreasonably dangerous to normal use, he need not prove any negligence on the part of the manufacturer. We thus held that the plaintiff need not show that the manufacturer knew or should have know the product was defective. If the manufacturer can show that he could not have known of the defects using prevailing research and scientific techniques under the state of the art, the manufacturer has an affirmative defense.[2]
Accordingly, I would respond to the certified question as follows:
Louisiana law and jurisprudence provide that in a strict products liability case, a manufacturer cannot be held liable for injuries caused by an unreasonably dangerous product if the manufacturer establishes as an affirmative defense that the inherent danger posed by its product was not discoverable using prevailing research and scientific techniques under the state of the art.
For the reasons assigned, I respectfully dissent.
NOTES
[1] See Halphen v. Johns-Manville Sales Corp., 755 F.2d 393 (5th Cir.1985): "This is a strict products liability action for damages from wrongful death between Emma Jean Halphen, Plaintiff, and Johns-Manville Sales Corporation, Defendant, which was tried in the United States District Court for the Western District of Louisiana in Lake Charles, in January, 1982.

"Plaintiff's husband, Samuel Halphen, died during the pendency of the lawsuit from a malignant pleural mesothelioma, a cancer of the lining of the lung. Plaintiff alleged that her husband had been exposed to asbestos-containing products sold by Johns-Manville, while working at a shipyard in Orange, Texas in 1945, and at various times during his career as a serviceman in the Air Force." Id. at 393-4.
[2] This test is known as the risk-utility or danger-utility test. Other tests may have their own merits in different contexts, see DeBattista v. Argonaut-Southwest Ins. Co., supra; Herbert v. Brazzell, supra; Welch v. Outboard Marine Corp., 481 F.2d 252 (5th Cir.1973). We are convinced, however, that the risk utility test is best for determining whether a product is unreasonably dangerous per se. See Turner v. General Motors Corporation, 584 S.W.2d 844 (Tex.1979); Keeton, supra, 45 Mo.L.Rev. 579, 589-592. Donaher, Piehler, Twerski and Weinstein, The Technological Expert in Products Liability Litigation, 52 Tex.L.Rev. 1303, 1307 (1974); Birnbaum, Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence, 33 Va.L.Rev. 593, 611-649 (1980); Green, Strict Liability Under Sections 402A and 402B: A Decade of Litigation, 54 Tex.L.Rev. 1185 (1976).
[1] Judge Politz correctly answered the inquiry here in Halphen v. Johns-Manville Sales Corp., 737 F.2d 462 (5th Cir.1984).
[1] A warning is required whenever it could prevent an unreasonably dangerous product from being so. See Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978). Whether a warning that is given is adequate in form, content, or dissemination is a matter of fact, not law.
[2] La.Code Civ.P. art. 1005 provides that "[t]he answer shall set forth affirmatively arbitration and award ... and any other matter constituting an affirmative defense." List of named affirmative defenses in this article is illustrative, not exclusive. Webster v. Rushing, 316 So.2d 111 (La.1975). And burden of proof is on defendant. Crescent Cigarette Vending Corporation v. Toca, 271 So.2d 53 (La.App. 4th Cir. 1972).

Several states have enacted statutes expressly providing for an affirmative "state of the art" defense in strict products liability cases. E.G. Ariz.Rev.Stat.Ann. § 12-683 (Supp.1980); N.H. Rev.Stat.Ann. § 507-D:4 (Supp.1979).