533 So.2d 157 (1988)
Douglas NEVILS
v.
The SINGER COMPANY, Sears, Roebuck and Co. and the Travelers Insurance Company.
No. 88-CA-234.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1988.
*158 Vaughan, Messina & Hellman, Gary M. Hellman, New Orleans, for plaintiff-appellant.
Timothy M. Waller, Sr., Metairie, for defendant-appellant.
Monroe & Lemann, Mark E. Van Horn, Gerard A. Bos, New Orleans, for defendants-appellees.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.
This is a product liability case. Douglas Nevils, plaintiff-appellant, severed three fingers of his left hand while using a portable circular saw designed and manufactured by the Singer Company, and sold under the Craftsman label by Sears, Roebuck & Company, defendants-appellees. After a judge trial on the merits, judgment was entered in favor of defendants, and plaintiff now appeals alleging three errors:
1. The trial court improperly refused to permit plaintiff to call as a witness in his case-in-chief for cross-examination a representative of the defendants;
2. The trial court improperly limited pre-trial discovery to the prejudice of the plaintiff; and
3. The trial court's conclusion that the saw in question was not defective was wrong both factually and legally.
Because our review of this matter reveals no reversible error on the part of the trial judge, we affirm.
The accident, according to Nevils, occurred as follows. He was using the saw to cut a three or four inch wide strip off a sheet of ¾ inch plywood. He stated that he clamped the plywood to two saw horses, made his line on the wood, set the saw blade to the proper depth, and positioned himself to begin the cut. With both hands on the saw, he began to cut and sawed into the plywood some eight to ten inches without incident. At that point he noticed that he was not properly positioned to continue the cut so he released the trigger, allowed the blade to stop, and backed the saw a few inches from the leading edge of the cut. He then repositioned his feet and restarted the blade. However, instead of placing his left hand on the saw, he instead placed it on the board to the left of the cut and somewhat to the rear of where the saw was resting. When the blade reached maximum speed, he advanced the saw to continue the cut. He stated that when the saw reached the front edge of the cut, it kicked back and up about a foot above the surface of the plywood. At that point, he let go of the saw, and it came down on the fingers of his left hand, severing three of them. Plaintiff alleged at trial, and again urges here, that the saw was defectively designed because the manufacturer failed to include both a blade brake and a riving knife, both of which he contends would have prevented, or at least ameliorated, his injuries.
To prevail in any strict liability case, the plaintiff must prove that the thing at issue had some vice which created an unreasonable risk of injury, and that his injury resulted from that vice. Once this is proved, the defendant can escape liability only if he shows that the harm was caused by the fault of the victim, or a third person, or by an irresistable force, Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986). The court in Halphen also explained that where it is alleged that an alternate design or alternate product was available, the manufacturer is held to the standard and skill of an expert, i.e., could it have known of and feasibly avoided the danger by using a different design or incorporating alternate safety features into the product. This theory of liability does not, however, avail a plaintiff who fails to prove *159 initially that the alleged design defect was the cause in fact of his injury.
In the present case, plaintiff alleged two design defects. The first was that the saw in question was not manufactured with a riving knife. This device is a small fixed blade which is attached to the frame of the saw behind the rotating blade. Its function is to keep the kerf of the cut open and prevent the saw blade from binding. Defendants called two experts on saw design and manufacture, both of whom testified as to why riving knives are not on circular saws. The first problem identified was that these devices tend to get bent out of alignment with the saw blade if the saw is dropped or stored resting on the knife. Second, if a thicker or thinner saw blade is placed on the saw, a similar thicker or thinner riving knife must be used. As a result of these problems, it was found by manufacturers that the only time users of saws ever touched these knives was to remove them.
A more serious problem with plaintiff's theory as to the riving knife, however, related to causation. Plaintiff's expert, Mr. Gary Robinson, originally testified that had the saw been equipped with a riving knife, it would have acted as a barrier between the blade and plaintiff's fingers, and thus pushed his fingers away from the blade as the saw kicked back. However, on cross-examination, he admitted that if the saw had come up a foot above the surface of the plywood and then come down, as plaintiff testified, a riving knife would not have prevented the accident. He also admitted that in only a ten inch cut, the riving knife would not yet have entered the kerf, and therefore that its design function of keeping the kerf open to prevent blade binding and consequent danger of kickback would not yet have come into play. On this showing, it is evident to this court that even if such a device had been built into the saw, it would not have prevented the present accident. Thus, even could it be said that the lack of such a device constitutes a design defect, (which we do not find on the facts here) that would be of no consequence in this case because plaintiff failed to prove that the alleged defect caused his particular injuries.
A similar problem arises in regard to plaintiff's second alleged design defect, i.e., the absence of an automatic blade brake. Again, expert testimony was that some portable saws are built with an electronic brake which will stop the blade within one or two seconds as opposed to about seven seconds for a free spinning blade. Defendant's experts both explained that these brakes operate by reversing the flow of electricity through the saw motor. They also stated that one of the problems encountered with such devices is that they place a strain on the moving parts of the saw, causing mechanical problems, and over time become unreliable. Mr. John Bennett, one of defendant's experts who designs and tests saws for Black & Decker, testified that his company does manufacture an industrial grade circular saw with a brake. He further testified, however, that the brake is not considered a safety feature, but is rather to facilitate more rapid use of the saw by reducing the time between cuts. He further stated that the primary safety feature on such tools is the retractable lower blade guard which covers the blade in about 0.2 seconds, which is much faster than the automatic brake. He also stated that the retractable guard has the advantage of operating independently of the user in that it opens and closes as the blade enters or leaves the kerf, and does not depend on the user's releasing the trigger as does the electric brake. Plaintiff's second expert, Mr. Stanley Kalin, testified that in his opinion an automatic brake would have prevented, or at least lessened the severity of, the injuries. He was, however, unable to offer more than conjecture for this conclusion. While admitting that he had no idea how quickly the present incident occurred or whether a brake would have stopped the blade before it struck plaintiff's fingers, he nonetheless concluded that the absence of the brake was a causative factor in the injury. It is this court's opinion that this expert's conclusion is nothing more than speculation, and that plaintiff thus failed to prove that the absence *160 of a brake on the saw more probably than not caused or exacerbated his injuries. We also note in this regard that there was no evidence to show that the lower blade guard was defective, and plaintiff's experts admitted that they found no problems with it. Defendant's experts also gave uncontroverted testimony that the blade guard, if functioning properly, is always in contact with the surface of the work being cut and that in a kick-back situation the front of the guard always remains in contact with that surface and closes as fast as the blade comes out of the kerf. Given this fact, it must be assumed that the guard closes when the blade left the surface of the work, and that it was fully closed when the saw came back down. As there was no other evidence to show how a saw with a closed blade guard could possibly have caused plaintiff's injuries, this court has reservations about plaintiff's explanation of how this accident occurred. It remains a mystery to this court as it must have to the trial court, how a covered blade could have cut off the plaintiff's fingers. In addition, as stated above, victim fault is a defense to any strict liability claim. In this case, plaintiff testified that he had read the user's manual provided with the saw. In both written text and pictures, the manual clearly warns about the kick-back phenomenon, specifically warns that users should keep both hands on the saw at all times, and further warns users not to place their hands on the work being cut. In spite of all these warnings, of which plaintiff admits he was aware, he did precisely what the manual explicitly warned he should never do. There is no question that had he heeded these explicit warnings in the manual as to proper operation of the tool, the accident would not have happened.
Considering all of these circumstances, we can only conclude, as did the trial judge, that plaintiff failed to show that his injury was caused by any alleged vice in the product which could have been eliminated by the defendants through alternate design or use of alternate products in the manufacture of the saw. We further conclude that plaintiff was at fault in failing to heed explicit warnings about proper use of the tool, and that defendants met their burden of showing that victim fault, rather than any alleged design defect, was the cause of the accident. Having so concluded, we hold that the trial court's findings of fact are not manifestly erroneous, and that under the applicable legal standards judgment was properly rendered in defendant's favor.
Plaintiff's two other assignments of error are equally meritless. In the first of these, plaintiff alleges that the trial judge erred in refusing to allow him to call Mr. Jack Kramer, a Singer representative, in his case-in-chief for purposes of cross examination. The facts giving rise to this allegation are that at the time of the accident, Kramer was employed by Singer as a design safety engineer. During discovery, he and David Peot had been produced by Singer as representatives, and the depositions of both men had been taken. By the time of trial, Kramer was no longer employed by Singer, but he was nonetheless present in court during the entire trial. During his case-in-chief, plaintiff called Kramer as an adverse witness, defendants objected on the grounds that Kramer was no longer employed by Singer, and that Mr. Peot was Singer's representative at trial. The defense further indicated to the trial that they expected to call Kramer as a witness later. The trial judge ruled that plaintiff would not be permitted to call Kramer. As it turned out, defendants decided not to call Kramer as a witness, and he thus did not testify.
Although plaintiff is correct in asserting that Kramer was a "representative" of Singer pursuant to La.Code Civ. Pro., art. 1634, and plaintiff therefore should have been allowed to call him under cross-examination, he nonetheless has failed to show any prejudice from the refusal of the trial court to permit such examination. See Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5th Cir.1985).
There is no question that Kramer's deposition was taken by plaintiff. However, that deposition was not proffered by *161 plaintiff, nor was it otherwise made a part of the record. Plaintiff asserts in brief that his case was somehow prejudiced in not being able to cross-examine Kramer, but he fails to provide any specific information as to what Kramer said in his deposition that could possibly have altered the outcome of his case had similar testimony been elicited at trial. We further note that we have already concluded that the cause of the accident was plaintiff's failure to heed the admittedly adequate and known warnings as to proper use of the saw. As this finding of victim fault was based on testimony offered by plaintiff himself, we fail to see what light Kramer could have shed on this evidence that would have altered the outcome of the case. We therefore hold that the trial court's ruling, although erroneous, was harmless error.
Plaintiff's final assignment of error is that the trial court improperly limited pretrial discovery. The plaintiff had learned prior to trial that Singer had at one time manufactured a circular saw with both a brake and riving knife, but had discontinued that model. Plaintiff's theory in regard to this prior model was that Singer and Sears discontinued it solely for economic reasons, even though they knew that it was safer than other models without these features. Plaintiff therefore sought extensive discovery about the decision to discontinue the prior saw, including costs data, and all accidents involving that saw about which defendants were aware. Defendants objected to discovery of the costs data on the grounds that this information was privileged but did provide retail price information. As to accidents involving the prior saw, defendants objected on the grounds that such accidents were irrelevant to the present case because they had no relation to the tool at issue here. The trial court sustained these objections, and plaintiff now asserts that he was prejudiced thereby.
We disagree for two reasons. First, as pointed out earlier in this opinion, plaintiff's own expert testified that the absence of the riving knife was not a causative factor in this accident. Likewise, plaintiff's assertion that a brake on the saw would have prevented or lessened his injuries is nothing more than speculation on the part of his experts. Having failed to meet the threshold showing that lack of either device was the cause of his injury, the reasons that the manufacturer did not include these devices, or the accident history of saws having such devices, are now simply irrelevant. Second, plaintiff's experts testified that the warnings in the saw manual were adequate, and plaintiff admitted having read those warnings, but did not follow them. Clearly, this constitutes victim fault, and precludes recovery. In these circumstances, we fail to see any prejudice to plaintiff's case which was a result of the trial court's limitations on discovery.
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.