Rod C. RAMSEY

v.

BELL HELICOPTER TEXTRON.

Civ. A. No. 87–619.

United States District Court,
E.D. Louisiana.

July 12, 1989.

See also, 704 F.Supp. 1381.

Lawrence J. Smith, Alan Brandon Parker, Thomas F. Weymann, Jean M. Farquharson, New Orleans, La., for Rodney C. Ramsey.

Spero & Rosenfield Co., L.P.A., Keith E. Spero, Cleveland, Ohio, for plaintiff.

Hulse, Nelson & Wanek, Randall L. Kleinman, New Orleans, La., for American Cas. Co. & C & B Production Contractors, Inc.

Milling, Benson, Woodward, Hillyer, Pierson & Miller, George B. Jurgens, III, Andrew Podolnick, W. Michael Workman, New Orleans, La., for Chevron USA.

Christovich & Kearney, A. r. Christovich, Jr., New Orleans, La., for Textron, Inc., Bell Helicopter Textron, Inc.

Terriberry, Carroll & Yancey, Robert S. Reich, New Orleans, La., for Frank Patton, Jr.

## ORDER AND REASONS

ARCENEAUX, District Judge.

This matter comes before the Court on motion for summary judgment filed by the defendant, Bell Helicopter Textron ("Bell"). Having thoroughly reviewed the record, the memoranda of counsel and the law, the Court has determined that summary judgment is appropriate for the reasons set forth hereinafter.

The plaintiff, Rodney C. Ramsey ("Ramsey"), filed this lawsuit seeking damages for personal injuries allegedly sustained when a main rotor separated from a Bell 206B Jet Ranger helicopter during takeoff on an offshore platform, went through the wall of the bunkhouse where Ramsey was sleeping, and injured his legs. The plaintiff sues Bell in products liability for defective design. According to the plaintiff, the design of the underslung, teetering, two-bladed rotor system is defective because of its alleged capacity for "mast bumping." This phenomenon allegedly occurs when the static stops of the main rotor hub come in contact with the main rotor mast. The plaintiff claims that mast bumping caused his injuries, when the main rotor mast was severed and the main rotor separated from the helicopter.

Under applicable Louisiana law, in order to maintain an action for product liability, the plaintiff must prove:

1.  the product was defective;

2.  the product was in normal use at the time the injury occurred;

3.  the defect proximately caused the injury; and

4. the plaintiff's injury might reasonably have been anticipated by the manufacturer.

*Goode v. Herman Miller, Inc.*, 811 F.2d 866 (5th Cir.1987). "Normal use" includes all intended uses, as well as all foreseeable uses and misuses of the product. *Bloxom v. Bloxom*, 512 So.2d 839 (La.1987).[1]

In its motion, Bell argues that the helicopter was not in normal use at the time of the plaintiff's injuries. Bell focuses on the undisputed fact that the pilot, Frank Patton ("Patton"), had failed to remove the tie-down rope attached to the deck of the heliport and two points on the nose of the aircraft when attempting to take off. The plaintiff does not dispute that this failure contributed to the accident, but argues that the mast bumping which occurred during the crash sequence of the helicopter constitutes a cause of the accident sufficient to visit liability on Bell.

The plaintiff argues in opposition that the mast bumping "started while he [Patton] was still trying to break the rather light-weight tie-down line on the front of the helicopter." (Doc. 142, p. 8). The facts relative to the crash sequence relied upon by the plaintiff in opposition derive from pages 204 to 206 of Patton's deposition. Those facts show that any mast bumping, assumed here to have occurred, began after the helicopter crashed into the platform safety wind screen and while vertical to the platform, nose down, tail up. The pilot was attempting to break the tie-down rope by accelerating and pulling power. He was already heading toward the platform when the aircraft became silent, a circumstance the plaintiff claims is indicative of mast bumping. It was at that time that Patton recalls a rope broke, he crashed into the platform, and rolled into the water.

Initially, the Court notes that the parties here may have implicitly mischaracterized the relevant use of the helicopter at the time of injury as simply attempting to take off without removing the tie-down ropes. Indeed, to this end the plaintiff has tried to establish through experts that forgetting to remove tie-down ropes is a foreseeable circumstance. The Court has several problems with translating this circumstance into a relevant foreseeable use or misuse of the product under the facts presented. First, this product is only operated by trained pilots, who would otherwise qualify as a species of sophisticated users, and who are required, as Patton was here, to ensure that this circumstance, so obviously contrary to the ability of the aircraft to properly function, does not occur by the use of visual inspection and written pre-flight check lists and procedures. Secondly, the immediate and proximate result of such attempted use of the aircraft is clearly the resulting downward pitch while hovering, experienced here, which the pilot noted but he further neglected to attribute to the existence of the rope. The facts do show that the downward pitch occurred while the helicopter was being put to its normal use or reasonably foreseeable misuse during take off while anchored to the heliport. What the facts do *not* show is that the claimed defect of mast bumping occurred during a take off which involved a normal use or foreseeable misuse of the helicopter arising from the failure to remove the ropes.

As the plaintiff admits, the claimed defect allegedly came into play while the product was vertical to the platform and being used and accelerated in an effort to break the tie-down rope. The issue presented to this Court, then, is not whether a pilot's failure to untie a tethered aircraft is a foreseeable misuse, but rather

---

**1.** Of course, "An essential element of a plaintiff's case under each strict liability theory of recovery is proof that the defendant's product was unreasonably dangerous to normal use." *Halphen v. Johns–Manville Sales Corp.*, 484 So.2d 110, 113 (La.1986). Because the focus of this Court's attention is "normal use," as defined in the jurisprudence, the Court does not reach issues relative to how a product may be "unrea-

sonably dangerous" in design as set forth in *Halphen, supra* at 115.

In addition, the Court notes that under Louisiana law, the concepts of strict liability and negligence are substantially the same except for the element of knowledge of the risk involved in a negligence claim. *Bridges v. Chemrex Specialty Coatings, Inc.* 704 F.2d 175 (5th Cir.1983).

whether applying power to a helicopter in flight in an effort to break a tie-down rope or ropes is an intended use, or foreseeable use or misuse, of the product.

There is no argument being made that the Bell helicopter was intended to be used to break tie-down ropes. The plaintiff argues instead that such a use is a foreseeable use or misuse of the product. The Court cannot agree; indeed, there is no objective evidence offered in support of that theory. Thus, the Court finds as a matter of law that under these circumstances, the use of the helicopter to break tie-down ropes is not reasonably foreseeable. Bell was under no duty to design its product so as to prevent injuries arising from such use of its product.

The concept of foreseeability would be totally meaningless if made to include every use which hindsight showed to be conceivable or possible. A use or misuse merely conceivable when contemplating such worst-case scenario as is present here is not the type of foreseeable use or misuse to which Louisiana law attaches liability. Indeed, Louisiana law provides that the manufacturer is under no duty to make a product that will withstand abuse or is "foolproof." *Scott v. White Trucks*, 699 F.2d 714, 717 (5th Cir.1983). Foolproofing is exactly what the plaintiff is claiming here in asking the Court to isolate what is clearly an inseparable part of destruction and damage caused by product misuse so blatant that it constitutes abuse.

In this regard, the Court notes comments contained in the plaintiff's expert reports to the effect that absent the mast bumping, again assumed to have occurred, the pilot would have been able to break the tie and safely maneuver the helicopter. Not only do these experts fail to support these comments with either fact or theory relative to the dynamics involved in breaking the rope under the circumstances facing the helicopter at the time the mast bumping allegedly began, but none of these experts are qualified to express an opinion as to the relevant physical characteristics of the rope involved, or the dynamics involved in breaking such ropes. What the facts do establish is that the helicopter was already in peril in its futile attempts to break free of its ties when the allegedly defective phenomenon is alleged to have occurred. In addition, any conclusion supporting the theory that a helicopter in a crash sequence, accelerating while tethered vertically by this rope in such a confined space, would more probably than not have been able to safely break the rope defies common sense and logic.[2]

Discovery is complete in this matter. Under *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment is in order. Accordingly,

IT IS ORDERED that the motion for summary judgment filed by Bell Helicopter Textron is hereby GRANTED. Judgment will be entered accordingly.

---

**2.** The Court does not believe that the volume of the record in this matter undercuts the relative simplicity of its holding herein. Rather, it may be more indicative of the efforts made on behalf of this tragically injured plaintiff, where fault so clearly lies with those statutorily protected.