572 So.2d 289 (1990)
Robert C. GILBOY[1]
v.
AMERICAN TOBACCO COMPANY; R.J. Reynolds Tobacco Company; Lorillard, Inc.; The Tobacco Institute, Inc. and K & B Louisiana Corporation.[2]
Nos. CA 90 0696, CA 90 0697.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Writ Granted January 31, 1991.
George R. Covert, Baton Rouge, for plaintiff-appellant Robert C. Gilboy.
Curtis R. Boisfontaine, New Orleans, for defendant-appellee The American Tobacco Co.
Gary R. Long, Kansas City, Mo., John M. McCollam, New Orleans, for defendant-appellee Lorillard, Inc.
Charles L. Chassaignac, New Orleans, Theodore M. Grossman, Cleveland, Ohio, for defendant-appellee R.J. Reynolds Tobacco Co.
Henry D. Sallassi, Jr., Baton Rouge, for defendant-appellee K and B, Inc.
K. Eric Gisleson, New Orleans, for defendant-appellee The Tobacco Institute, Inc.
Before COVINGTON, C.J., and LANIER and VIAL LEMMON,[*] JJ.
COVINGTON, Chief Judge.
Plaintiff-appellant Robert C. Gilboy, Sr. brought an action against the American Tobacco Company, R.J. Reynolds Tobacco Company, Lorillard, Inc., The Tobacco Institute, Inc. and K & B Louisiana Corporation, for damages due to serious illness, *290 allegedly brought about because of a lifetime smoking habit.
Plaintiff's theories of liability are based on negligence, products liability, and strict liability via "ultra hazardous activity."
The trial court granted defendants' motion for summary judgment. Mr. Gilboy appeals. We affirm.
Robert C. Gilboy suffered a seizure on March 31, 1986. Doctors at Baton Rouge General Hospital diagnosed cancer of the brain and lung. Plaintiff subsequently filed this lawsuit alleging defendants were liable to him because of negligence, ultrahazardous activity, and various theories relating to product liability laws.
Defendants' asserted in their motion for summary judgment that plaintiff failed to state a claim under Louisiana Product Liability Law, and defendants further contend that plaintiff's claims were preempted by federal law, including The Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331-1340, as amended by the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1331 et seq. (1966), and the supremacy clause of the Constitution of the United States, Art. VI, Sec. 2.
The ultra hazardous activity assertion has no merit. This category covers such activities as pile driving, storage of toxic gas, blasting with explosives, crop dusting with airplanes. These activities contain risks that are reasonable but still dangerous enough that a party undertaking these activities will assume the consequences for injuries to others. These injuries are caused by the activity itself. Unlike any of these activities, smoking cigarettes is a simple consumer decision entered into with warnings of the possible consequences. It is not an activity in any way related to an ultrahazardous activity.
Considering plaintiff's products liability theory of defendants' liability, we note that plaintiff has not pointed to a single case where recovery was allowed in this type of lawsuit. Products liability is a theory of recovery that in general terms requires manufacturers and sometimes distributors or others involved in placing the product before the public, to compensate purchasers, users or perhaps even bystanders, for damages suffered, as a result of defects in the product. If a product has a defective condition that makes use of the product unreasonably dangerous, recovery will be allowed.
Products liability cases are numerous in Louisiana with liability imposed on a wide variety of defendants; see, e.g. Storey v. Lambert's Limbs & Braces Inc., 426 So.2d 676 (La.App. 1st Cir.1982), writ denied, 433 So.2d 152 (La.1983). However, absent from this spectrum of defendants are cigarette manufacturers. This is due in part to the wide spread knowledge that smoking cigarettes is hazardous to one's health. Cigarettes do cause harm. But they do so for the obvious reasons and not as the result of a hidden defect or dangerous condition that catches the user unaware.
We note that in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 114 (La. 1986), the court stated:
Although a product is not unreasonably dangerous per se or flawed by a construction defect, it may still be an unreasonably dangerous product if the manufacturer fails to adequately warn about a danger related to the way the product is designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. [Emphasis added].
* * * * * *
Mr. Gilboy knew prior to 1966 (Congressional Labeling Act) that cigarettes were hazardous to one's health. The dangers of smoking were known to Mr. Gilboy years ago and these dangers are now known by the public in general. Moreover, Congress took action in 1966 and required cigarette manufacturers to carry warning labels.
In referring to the Labeling Act in a similar case, Pennington v. Vistron Corp., 876 F.2d 414 (5th Cir.1989), the federal Fifth Circuit concluded:
... We hold that the Act preempts those claims that challenge the adequacy of the *291 warning on cigarette packages after 1965, or suggest that the tobacco companies had a duty to provide warnings in addition to the warning mandated by Congress, or question the propriety of the tobacco companies' advertising and promotional activities. We also conclude, however, that the preemptive scope of the Act is not so broad to encompass every possible claim of injury arising from the smoking of cigarettes after 1965. We find that Mrs. Pennington's contention that cigarettes are unreasonably dangerous per se under Louisiana law is not preempted.
The court in Pennington, having opened the door to possible classification of cigarettes as unreasonably dangerous per se under Louisiana law, upheld the defendant's motion for summary judgment on factual grounds relating to plaintiff's lack of proof as to causation.
We determine as a matter of law that cigarettes are products that are not unreasonably dangerous per se.
In the Halphen, supra, where the unreasonably dangerous per se category was discussed, our supreme court stated:
A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product.... Under this theory, the plaintiff is not entitled to impugn the conduct of the manufacturer for its failure to adopt an alternative design or affix a warning or instruction to the product. A warning or other feature actually incorporated in the product when it leaves the manufacturer's control, however, may reduce the danger-in-fact. [Emphasis added].
* * * * * *
Cigarettes contain this warning when they leave the control of the manufacturer and therefore the "danger" of the product is reduced.
Also in Halphen, we find the following language:
On balance, a rule of law requiring the manufacturer to assume the cost of accidents caused by products which are unreasonably dangerous per se, regardless of whether the danger was foreseeable, will provide an effective incentive to eliminate all possible dangers before putting products on the market.... [Emphasis added].
This is an understandable conclusion when a worker is injured by asbestos, or power equipment, etc. However, it would be unreasonable and unworkable to apply this rationale to someone who voluntarily smokes cigarettes for a lifetime, and then tries to hold the manufacturer and others liable for the harm he was aware of all along.
The rule of law discussed in Halphen, supra, tags the manufacturer for liability for the cost of accidents caused by their unreasonably dangerous products.
Ignoring causation problems which may be present, we are unable to classify health injuries from a lifetime of voluntary smoking as accidental. Choices have consequences. Mr. Gilboy chose to begin and continue smoking, knowing that it was dangerous to his health. He now looks to the courts to protect him or at least somewhat insulate him from a series of daily decisions stretching from the present all the way back to the 1940's, when he was a teenager. If we were to rule in his favor we would open up the flood gates to similar controversies.
Those who had a lifetime drinking habit that finally ruined their health would seek to have liquor manufacturers compensate them. There would be no end to this type of litigation which would promote the abdication of individual responsibility. Effective 1966 cigarette manufacturers had a legal right to manufacture and market cigarettes provided they carried the statutorily required warning. Mr. Gilboy had the legal right to choose to smoke. He also had the knowledge that this could seriously jeopardize his health. The law would protect him from a product that had a hidden defect. The law would protect him from a product that lacked an adequate warning. *292 The law would even protect him from harm arising from the misuse of a defective product. However, the law will not protect him from himself. Based on the uncontested facts of record in this case, we conclude as a matter of law that the risk complained of by the plaintiff is not within the ambit of protection of the duty of care required of a cigarette manufacturer.
As stated in the trial court's reasons for judgment:
* * * * * *
Also, the court is aware from the deposition of Mr. Gilboy that he candidly made statements that he was aware that the public was sensitive to the fact that cigarettes would put nails in your coffin; that had there been any warnings prior to January 1st, '66, It wouldn't have done any good in that he would still have smoked the tobacco. It brings us to a point whether or not the law requires a warning if a person would not have heeded that warning, it would be vain and useless to have a warning.
* * * * * *
For the foregoing reasons, we affirm the judgment of the trial court.
Costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] The original plaintiffs were alleged "donees" of Robert C. Gilboy, namely, Adrienne "Tony" D. Gilboy, Carol Gilboy Hill, Lauren Gilboy Orsak, Robert C. Gilboy, Jr.; and a non-profit organization, Stop Teenage Addiction to Tobacco. These parties were dismissed as parties plaintiff on peremptory exceptions of no cause of action and no right of action. As a result of the ruling by the court on February 28, 1989, in Nos. CA 87 1644 and CA 87 1645, 540 So.2d 391, Gilboy, Sr. was named as the proper plaintiff and on motion of defendants, unopposed by original plaintiffs, the consolidation of suit nos. 318,361 and 314,002 was vacated. In the former, the matter was dismissed as to all defendants on September 9, 1987. No appeal was taken from that judgment. Under C.C.P. art. 853, Gilboy, Sr. was substituted as the proper party plaintiff.
[2] The correct name is K & B, Incorporated.
[*] Judge Mary Ann Vial Lemmon of the 29th J.D.C., is serving as judge pro tempore by special appointment of the Louisiana Supreme Court to fill the vacancy created by the illness and subsequent death of Judge Steve A. Alford, Jr.