509 So.2d 563 (1987)
Mathieu LeBLEU, Plaintiff-Appellant,
v.
HOMELITE DIVISION OF TEXTRON, INC., and Henry Morgan, d/b/a Henry's Mower Sales, Defendants-Appellees.
No. 86-381.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Reuvan Rougeau, Lake Charles, for plaintiff-appellant.
Richard T. Simmons, Jr., Metairie, Raggio, Cappel, Chozen & Berniard, Frederick L. Cappel, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
*564 DOMENGEAUX, Judge.
Mathieu LeBleu was injured at work by a chain saw which was being operated by a co-employee. He brought this suit against the retailer of the chain saw, Henry Morgan, d/b/a Henry's Mower Sales, and against the chain saw's manufacturer, Homelite Division of Textron, Inc. Trial of this case was begun before a jury. After presentation of the plaintiff's evidence, the trial court granted each defendant a directed verdict and dismissed the plaintiff's case. The plaintiff appeals.
Mathieu LeBleu worked as a mower operator and laborer for the Calcasieu Parish Police Jury. On August 2, 1983, he and a co-employee, Virgil Lewis, were working on a parish project, clearing stumps and debris from a site where a boat ramp was to be built. At that time, Virgil Lewis was using a chain saw to cut the stumps. Mr. LeBleu was standing behind Mr. Lewis, clearing away debris as they worked. During this operation, Mr. LeBleu was injured on his right hand by the chain saw.
At trial Mr. LeBleu testified that the chain saw "kicked back"[1] as Mr. Lewis cut a stump with it. He stated that the kickback caused the saw to travel over Mr. Lewis's right shoulder and to strike him on his right hand as he stood behind Mr. Lewis. Mr. LeBleu alleged that his injury was caused by a defect in the saw, or in the alternative, by the negligence of the defendants. In granting the defendants' motions for directed verdict, the trial court concluded that based on the evidence presented, reasonable persons could not return a verdict in the plaintiff's favor based upon a finding of a defect in the saw.
The motion for directed verdict is provided for in Louisiana law by La.C.C.P. Article 1810. In Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), this Court explained the purpose behind the directed verdict, stating:
"... `[the directed verdict] serves judicial efficiency by allowing the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict.' Civil ProcedureWork of Louisiana Legislature for 1977 Regular Session, 38 La. L.Rev. 152, 157 (1977); See also Williams v. Slade, 431 F.2d 605 (5th Cir.1970)."
The Court in Campbell concluded that the correct standard for evaluating the motion for directed verdict is that applied in the Federal Courts. Citing Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969), the Campbell Court stated the following at page 239:
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in *565 favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
The Court in Campbell also noted that credibility evaluations of witnesses play no part in reaching a decision on a motion for directed verdict. 373 So.2d at pages 239, 240.
We now turn to the standard for determining liability in a products case. In Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986), our Supreme Court made the following statements:
"There is general agreement upon the most basic principles of strict tort products liability. In order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985); Hebert v. Brazzel, 403 So.2d 1242 (La.1981); DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La. 1981); Hunt v. City Stores, 387 So.2d 585 (La.1980); Chappuis v. Sears, Roebuck & Co., 358 So.2d 926 (La.1978); Weber v. Fidelity & Casualty Ins. Co. of New York, 259 La. 599, 250 So.2d 754 (1971)."
Also, a product may be unreasonably dangerous to normal use if the manufacturer fails to adequately warn users about a danger related to the way the product is designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. Halphen, supra; Chappuis, supra.
We also note that a non-manufacturer seller of a defective product is responsible for damages in tort, only if he knew or should have known that the product sold was defective and failed to declare it. La.C.C. Article 2545; Harris v. Atlanta Stove Works, Inc., 428 So.2d 1040 (La. App. 1st Cir.1983), writ denied, 434 So.2d 1106 (La.1983).
In determining whether a product is unreasonably dangerous in normal use our courts compare the product's utility with its risk of harm. In Halphen v. Johns-Manville Sales Corp., supra, the court pointed out that there are three reasons for finding that a product is unreasonably dangerous because of its design, and related these reasons to the risk-utility balancing process involved. The Halpen court stated that a product may be unreasonably dangerous as a result of its design because: (1) a reasonable person would conclude that the danger-in-fact, whether forseeable or not, outweighs the utility of a product; (2) although balancing under the risk-utility test leads to the conclusion that the product's utility outweighs its danger-in-fact, alternative products were available to serve the same needs or desires with less risk of harm; or, (3) although the product's utility outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences. Halphen, supra, at page 115.
Whether a product is defective because of its design is factual and depends on the circumstances of each case. Thompson v. Tuggle, 486 So.2d 144 (La. App. 3rd Cir.1986), writ denied, 489 So.2d 919 (La.1986).
With these principles in mind, we must now determine from the evidence presented, taking it in the light most favorable to Mr. LeBleu, whether reasonable persons could have reached a different conclusion concerning the defendants' liability.
*566 Mr. LeBleu presented his case through his own testimony, and through the testimony of Dr. James J. Brennan, an expert in industrial engineering, Curtis Perkins, an employee with the Calcasieu Parish Police Jury who actually purchased the chain saw, and Henry Morgan, who testified on cross-examination. In addition, the chain saw was put into evidence, along with two different Owner's Operation and Maintenance manuals.
Mr. LeBleu testified concerning how the accident occurred. He stated that he was standing behind Virgil Lewis as Mr. Lewis was cutting a stump with the chain saw and that, as Mr. Lewis was cutting, the saw ricocheted or kicked back over Mr. Lewis's right shoulder, striking his right hand. He also stated that Mr. Lewis was cutting a stump that was "pretty good size".
Doctor Brennan's testimony concerned the design of the Homelite chain saw, its safety features, the warnings provided, and the availability of additional safety devices. Doctor Brennan testified that kickback was a phenomenon which is an inherent characteristic of chain saws which can only be minimized or prevented by adding to the saw safety features designed specifically for that purpose. Doctor Brennan stated that the design of the Homelite chain saw in this case incorporated a safety feature, called a Safe-T-Tip, which acts as a guard surrounding the nose of the chain saw, preventing the upper quadrant of the nose from contacting a surface. He stated further that this device, when in place over the nose of the chain saw actually prevents kickback. He indicated further that the Safe-T-Tip was intentionally designed to be removable so that the chain saw can be used without it. Doctor Brennan stated that once the Safe-T-Tip was removed, the saw had no kickback protection at all.
Doctor Brennan further testified that there were three additional safety features available which could have been incorporated into the saw, each of which could have reduced the risk of injury due to kickback when the saw was used without the Safe-T-Tip. He stated that these features are a low kickback chain, an asymmetrical bar, and a chainbrake. He testified that the low kickback chain and the asymmetrical bar reduced the likelihood of kickback occurring, while the chainbrake is designed to reduce or prevent an injury when kickback does occur. He indicated that either the low kickback chain or the chainbrake could have been employed with this saw.
Doctor Brennan continued, stating that it was his opinion that since kickback could cause a potentially lethal accident, the risks associated with use of the chain saw without safety devices outweigh the additional utility gain by having a removable Safe-T-Tip. Doctor Brennan concluded, testifying that it was his opinion that the operator's manual did not warn the user about the use of a safety chain, which would be the only safety feature present when the tip is removed. Doctor Brennan also indicated that it was his opinion that the warning on the saw itself was not adequate, stating that because of its characteristics it did not attract the user's attention.
A review of the Owner's Operation and Maintenance Manual reveals that Homelite was concerned about kickback occurring during use of their chain saws. The cover of the manual warns that chain saws can be dangerous and that kickback is the most dangerous of the reaction forces with which the user must contend. The manual explains how kickback occurs and how use of the Safe-T-Tip can prevent kickback. The manual also reveals that Homelite contemplated the use of their saw without the Safe-T-Tip in place in some circumstances. In the section "How to reduce the chance of kickback" the manual instructs the user in techniques on how to avoid kickback when the Safe-T-Tip is not in place. The manual also instructs the user on how to bore into a log with the end of the saw, and how to cut a log with the diameter larger than the length of the saw. These types of cutting operations cannot be accomplished with the Safe-T-Tip in place. In these situations, the operator's skill is the only way kickback can be controlled.
As already stated, in determining whether the condition of a product is unreasonably *567 dangerous, a comparison of utility and risk of harm is made. In this case the evidence is not so strongly and overwhelmingly in favor of Homelite that reasonable persons could not arrive at different conclusions. There is ample evidence showing that when this saw is used without the Safe-T-Tip, kickback can occur, placing the user and bystanders in danger of receiving personal injury. There is also evidence that the user's awareness of the phenomenon cannot always, by itself, prevent kickback from occurring. There is evidence that feasible alternatives existed which could reduce the possibility of injury from kickback. There is also evidence that the warning placed on the chain saw itself was not adequate to alert and direct the user to the Owner's Manual. Furthermore, the record contains evidence that this condition of the saw existed at the time it left the manufacturer's hands and that Mr. LeBleu's injury resulted from this condition of the chain saw.
We conclude that the evidence presented in this case is such that reasonable and fair-minded persons could have reached different conclusions concerning Homelite's liability in this case. Therefore, the trial court erred in granting a directed verdict with respect to Homelite.
With respect to Henry Morgan, however, we conclude that the trial judge did not err in granting a directed verdict of dismissal. In order to hold Mr. Morgan liable as the non-manufacturer seller of the saw, Mr. LeBleu must show that Mr. Morgan either knew or should have known that the saw was defective and failed to declare it.
Mr. Morgan testified that he assembled and tested the chain saw sold to the Parish in this case. He indicated that the chain saw came with the Safe-T-Tip already in place and that he sold it in that condition. He also testified that he was aware of low profile safety chain but did not sell the saws with that chain. He further testified that Homelite had never recommended to him that he sell the saws with low profile safety chain. He also stated that he provided a manual with the purchase of the saw.
Curtis Perkins, who purchased the chain saw for the Parish, testified that he could not remember whether the Safe-T-Tip was in place at the time he received the saw from Mr. Morgan. There is no other evidence relevant to Mr. Morgan's knowledge of a defect, if one exists, in the saw.
Given this evidence, we conclude that reasonable persons could not conclude that Mr. Morgan had knowledge of any defect, if one exists, in the chain saw in this case. The trial court, therefore, properly granted Mr. Morgan's motion for directed verdict in his favor.
For the above and foregoing reasons, the judgment of the district court is affirmed insofar as it granted a directed verdict in favor of defendant Henry Morgan, but reversed insofar as it granted a directed verdict in favor of defendant Homelite. Accordingly, this case is remanded to the district court for further proceedings not inconsistent with the views expressed herein.
Costs on appeal are assessed equally between the plaintiff Mathieu LeBleu and the defendant Homelite. Assessment of all other costs at trial shall await further disposition of this matter.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GUIDRY and STOKER, JJ., concur and assign reasons.
STOKER, Judge, concurring.
I concur in this case but wish to emphasize that, with reference to the manufacturer's liability, the only decision we have to make here is to determine whether reasonable and fair-minded jurors, in the exercise of impartial judgment, might reach different conclusions. Campbell v. Mouton, 373 So.2d 237 (La.App.3d Cir.1979). In Thompson v. Tuggle, 486 So.2d 144 (La.App.3d Cir.1986), writ denied, 489 So.2d 919 (La. 1986), this court had before it a case involving a bow-type chain saw which was not provided with a safety tip or guard to prevent kickback. It did not have any device which might stop the saw after kickback (a chain brake in that case). In Thompson, a majority of a five-judge panel, *568 after finding causation, found liability on the basis of failure to provide the safety device, a chain brake. The chain brake admittedly would not prevent kickback but could, in some cases, stop the running of the chain saw and thus prevent injury.
In the case before us we have a similar situation. If the safety tip is removed from Homelite's saw, there is no safety device of the kind discussed by plaintiff's expert which might stop the running of the saw. Considering the position taken by the majority in Thompson, we may well conclude that reasonable and fair-minded jurors might reach a similar conclusion concerning Homelite's saw in this case.
As I interpret the majority opinion in this case, it expresses no conclusions concerning the actual merits of the case, and I certainly do not express any conclusion on the merits.
GUIDRY, Judge, concurring.
I fully agree that the trial court did not err in granting Morgan's motion for a directed verdict. There is no evidence in the record to support a finding of liability on the part of Henry Morgan and reasonable and fair minded men in the exercise of impartial judgment could not decide otherwise.
Presumably, plaintiff seeks to impose liability on the manufacturer contending that Homelite failed to adequately warn of the danger of kickback when the "Safe-T-Tip" was removed from the saw; and, Homelite failed to adopt feasible alternative designs which could reduce the possibility of injury from kickback when the saw was being operated without the "Safe-T-Tip". In my view, the warnings on the chain saw and in the operator's manual are more than adequate and reasonable and fair minded men in the exercise of impartial judgment could not decide otherwise. However, in my opinion, considering the testimony of plaintiff's expert in a light most favorable to plaintiff and drawing therefrom all reasonable inferences, reasonable and fair minded men could possibly conclude otherwise on the alternative design issue. For these reasons, I respectfully concur.
NOTES
[1] The Owner's Operation and Maintenance Manual described kickback in the following manner: