DOMENGEAUX, Judge.
This is an appeal from a judgment denying recovery to the plaintiff, Sam Bernst-ine, for injuries received as a result of the kickback of a chain saw manufactured by defendant, Textron, Inc. (Homelite Division), and owned by defendant, Ben Carter. Mr. Carter was dismissed from this case via motion for directed verdict, and that dismissal is not at issue herein. The jury found no defect in the chain saw which could have caused plaintiffs accident and returned a verdict in favor of the defendant. We affirm.
At the time of his accident, Mr. Bemstine was a thirty-one (31) year old experienced chain saw user. He owned his own chain saw, a Homelite Model XL-12. Mr. Bernst-ine contracted to cut down and haul off a large pecan tree stump. His own saw was not working, so he borrowed a Homelite XL-12 from Ben Carter. The only difference between Carter’s saw and Bernstine’s saw was that the former was equipped with a bow attachment. The bow guide (attachment) is a pear-shaped frame which is attached to the power head. The chain fits around the pear-shaped frame. The space inside the frame is open to allow the cutting of pulpwood without the danger of binding the chain while a small log is cut. Bemstine was not accustomed to a bow saw, and in fact, had never used one. His experience with chain saws was limited to the more common bar saw, which consists of a rectangular arm attached to the power head, around which the chain travels. Although the safety and instruction materials that came with Bemstine’s saw did contain detailed information and warnings on the use of the bow saw, the plaintiff acknowledged that he did not read these materials or take any other steps to learn about the proper use of the bow saw.
On the day in question, Bemstine experienced a kickback reaction while using Carter’s bow saw. Kickback is described in the Homelite owner’s manual as a dangerous reactive force which occurs when solid contact with the moving chain is made with the upper segment of the tip of the bow guide. This force caused the saw to move backward toward the plaintiff’s body, resulting in severe lacerations to his face and chest. Bemstine still had some pain and scarring at the time of trial.
Bemstine contends that the chain saw which caused his injuries was defective because it did not have a chain brake to prevent the kickback phenomenon.
The standard for determining liability in a products case was articulated by our Supreme Court in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986):
There is general agreement upon the most basic principles of strict tort products liability. In order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer’s control.
484 So.2d at 113. The plaintiff, then, must meet a threefold burden; he must prove causation, defect, and control.
The question of control is not at issue. The plaintiff contends that the chain saw was defective at the time it left Homelite’s control because it was not manufactured with a chain brake. Homelite clearly did not install a chain brake on this saw; this is not a situation where a third party may have removed a safety device. The absence of a chain brake, the condition which allegedly renders the product defective, did exist at the time the product left the manufacturer’s control. Therefore, the plaintiff has met his burden of proof on this requirement.
*616 We turn now to the questions of whether that condition constituted a defect and, if so, whether the defective condition caused plaintiff's injuries.
DEFECT
Whether a product is defective because of its design is factual and depends on the circumstances of each case. LeBleu v. Homelite Division of Textron, Inc., 509 So.2d 563 (La.App. 3d Cir.1987); Thompson v. Tuggle, 486 So.2d 144 (La.App. 3d Cir.1986), writ denied 489 So.2d 919 (La. 1986).
Our review of the record reveals the following undisputed facts. Sam Bernstine was using a Homelite chain saw to which was attached a bow guide. The bow guide was not manufactured by Homelite, and in fact, Homelite literature specifically recommends against the use of a bow guide attachment. However, Homelite acknowledges that its customers may choose to purchase bow attachments for use with Homelite saws, and in anticipation of the problems that a customer may experience because of this alteration, Homelite provides detailed instructions and warnings for its proper use. The Homelite chain saw in question did not have a chain brake, which is a device designed to prevent injury as a result of kickback, but it did have a Safe-T-Tip which prevents the occurrence of kickback on a bar saw. The bar saw, as shipped from the manufacturer, does not have any safety device which is designed to protect against kickback of a bow saw. The bow attachment, however, does have spurs which serve to guide the saw as it travels along the wood.
For us to determine whether the absence of a chain brake renders the Homelite product defective, we must review the expert testimony presented at trial of this matter. The question presented is a factual matter and must be decided on the record before us. We cannot look to the prior jurisprudence of this circuit for resolution of this question.[1]
Essentially, this case boils down to a battle of the experts. The plaintiffs expert was eminently qualified in the fields of safety and design engineering. However, his expertise on chain saws is academic. He is well read on the subject, but he does not have firsthand experience with the use, design, and safety of bow saws. His testimony was based primarily on statistical and theoretical principles of engineering.
On the other hand, both defense experts have firsthand experience in the chain saw industry. They have used chain saws extensively and are intimately familiar with the chain brake mechanism. Neither believes that chain brakes are effective. In fact, they can cause chain saw operators to disregard safe practices and detrimentally rely on the chance that a chain brake may ' serve as protection from kickback. A chain brake does not necessarily engage every time kickback occurs, and when it does engage, it may not be in time to prevent injury. Both defense experts have used bow saws and are aware of the peculiar problems and dangers associated with the bow attachment. They testified that the bow saw can be safely used only when the guide spurs, which come with the bow attachment, are properly attached. The spurs can actually prevent kickback, in contrast to the chain brake which does not prevent kickback but can only guard against its consequences.
We find ample evidence to support the jury’s finding that the absence of a chain brake did not render the Homelite saw defective. The Thompson case recognized the factual nature of such a determination. In LeBleu, we remanded the case for a jury determination of this same factual question. Here, the facts support the jury verdict, and we find no manifest error therein.
*617 CAUSATION
Considering the wording of the jury interrogatory, we find it necessary to mention that the evidence supports a verdict in favor of the defendant on the issue of causation as well as on the question of defect. The jury returned the following verdict:
Q. Do you find the Homelite XL-12 chain saw in question to have a manufacturing defect which rendered it unreasonably dangerous and for which defect Homelite is responsible, and which caused Sam Bernstine’s injury?
A. No.
Even if the jury resolved the “battle of the expert” testimony in favor of the plaintiff, the jury still could have found for the defendant on causation, in light of the plaintiffs conduct.
The evidence established that the bow saw was an inappropriate tool for the plaintiffs task; furthermore, the plaintiff was aware of the impracticability and danger of using a bow saw for this job. Anderson Jackson, a professional woodcutter, testified that he was called in to cut down the tree stump after the plaintiff had made initial attempts to do so with the bow saw. Notably, Jackson used a bar saw for the job.
After Jackson cut the stump down, the plaintiff intended to chop it into pieces. Jackson knew that a bow saw could not be used for this task either and informed the plaintiff of this fact. Apparently, Bernst-ine chose to ignore this advice, for he was attempting to chop up the stump with the bow saw when the accident occurred.
In addition to the foregoing evidence, the testimony of Ben Carter revealed that the plaintiff may have actually removed the guide spurs which serve as an anti-kickback safety feature on the bow saw. When Carter’s saw was returned to him, the spurs were loose and incorrectly positioned. The jury could have concluded that the plaintiffs conduct in removing a safety feature was the legal cause of the accident, not the absence of a chain brake. We find no manifest error, should this have been the conclusion of the jury.
For the above and foregoing reasons, the judgment of the District Court is affirmed. Costs of this appeal are assessed to the plaintiff, Sam Bemstine.
AFFIRMED.

. In Thompson v. Tuggle, this Court held that a chain saw was defective because it did not have a chain brake to protect against kickback of a bow saw. However, the Court recognized that "the issue of defective design is factual and depends on the circumstances of each case.... Where the testimony of the expert witnesses differs, it is largely a matter of fact for the trier of fact to determine the most credible evidence, and such finding will not be disturbed on appeal unless manifest error appears on the record." 486 So.2d at 150.