582 So.2d 1263 (1991)
Robert C. GILBOY
v.
The AMERICAN TOBACCO COMPANY, et al.
No. 90 C 2686.
Supreme Court of Louisiana.
June 21, 1991.
Rehearing Denied September 5, 1991.
George R. Covert, Covert and Braud, Baton Rouge, for plaintiff-applicant.
Curtis R. Boisfontaine, Sally A. Shushan, Sessions and Fishman, Harry McCall, Jr., Charles L. Chassaignac, Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, John M. McCollam, Ewell E. Eagan, Jr., Steven W. Copley, Gordon, Arata, McCollam & Duplantis, K. Eric Gisleson, Steeg & O'Connor, Henry D. Salassi, Jr., Mangham, Hardy, Rolf & Abadie, Baton Rouge, for defendants-respondents.
Basile Uddo, New Orleans, for Louisiana Cancer and Lung Trust Foundation amicus curiae.
Taylor Caffery, Baton Rouge, for American Lung Ass'n of Louisiana amicus curiae.
Lawrence S. Kullman, Carl Joseph Barbier, Michael X. St. Martin, Adolph J. Levy, *1264 New Orleans, for Louisiana Trial Lawyers Ass'n amicus curiae.
WATSON, Justice.[1]
In this case claiming damages against cigarette manufacturers and a vendor,[2] the trial court granted summary judgment to defendants, principally on the theory that plaintiff voluntarily encountered the risks associated with cigarette smoking. The court of appeal affirmed. This court must determine whether summary judgment is appropriate.

FACTS
Plaintiff, Robert C. Gilboy, born in 1928, commenced smoking cigarettes at 12 or 13 years of age. After a seizure on March 31, 1986, Gilboy was diagnosed as having cancer of the lung and brain. This suit for damages was filed on March 30, 1987. The trial court granted summary judgment in favor of the defendant tobacco interests and dismissed plaintiff's suit. The court of appeal affirmed the summary judgment, determining as a matter of law that cigarettes are not unreasonably dangerous per se. Gilboy v. American Tobacco Co., 572 So.2d 289 (La.App. 1st Cir.1990). A writ was granted to consider whether summary judgment was properly entered. 573 So.2d 1128 (La.1991).

REQUIREMENTS FOR SUMMARY JUDGMENT
Louisiana provides for summary judgment in LSA-C.C.P. art. 966B., as follows: "* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Thus, the first and dispositive inquiry is whether the outcome of the litigation involves the resolution of any disputed facts.

DISPUTED ISSUES OF MATERIAL FACTS
The Surgeon General concluded in 1967 that "`the case for cigarette smoking as the principal cause of lung cancer is overwhelming.'" U.S. Dep't Health & Human Serv., The Health Consequences of Smoking: Nicotine AddictionA Report of the Surgeon General 11 (1988) (quoting U.S. Public Health Service, The Health Consequences of Smoking: A Public Service Review1967 (rev. ed. 1968)). Since normal use of cigarettes causes lung cancer, the risk from smoking cigarettes is enormous, while its utility is virtually nil. See Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971) and Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986). Manufacturers are presumed to know the dangers in their products. Rey v. Cuccia, 298 So.2d 840 (La.1974). Using Halphen's risk/utility test, a jury must determine whether cigarettes are unreasonably dangerous per se.
Defendants admit that cigarettes are inherently dangerous but contend that they are not defective under the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, et seq. The Act, effective September 1, 1988, after this suit was filed, abolished the category of things unreasonably dangerous per se, overruling Halphen. See Crawford and McDonald, "Product Liability for Design in Louisiana," 50 La.L.Rev. 531 (1990). While admitting that the Act legislatively eliminated a theory of recovery in Halphen, defendants make the contradictory argument that this was not a substantive change in the law but merely a change in interpretation which should be applied retroactively.
Since the Act alters substantive rights, it is not retroactive and does not apply to this lawsuit. See Cates v. Sears, Roebuck & Co., 928 F.2d 679 (5th Cir.1991); *1265 Horton v. Buhrke, A Div. of Klein Tools, Inc., 926 F.2d 456 (5th Cir.1991); Berry v. Commercial Union Ins. Co., 565 So.2d 487 (La.App. 2d Cir.1990), writ denied, 569 So.2d 959; McCoy v. Otis Elevator Co., Inc., 546 So.2d 229 (La.App. 2d Cir.1989), writ denied, 551 So.2d 636 and Cipollone v. Liggett Group, Inc., 893 F.2d 541 (3d Cir.1990). A statute that changes settled law relating to substantive rights only has prospective effect.
The procedural posture of this suit is very similar to that in Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 577 A.2d 1239 (1990). Dewey held that New Jersey's products liability law was not retroactive to a claim for cigarette caused damages. The New Jersey Supreme Court said that, as a matter of public policy, the manufacturers of cigarettes should not be immunized from liability for harm caused by their products. 577 A.2d at 1255.
In Pennington v. Vistron Corp., 876 F.2d 414 (5th Cir.1989), a summary judgment for defendant was affirmed in a suit with similar allegations, because plaintiff failed to submit proof that cigarette smoking caused or contributed to her husband's death from esophageal cancer. Here, causation has been alleged and it is a factual issue to be determined at trial on the merits.
The lower courts concluded that Gilboy voluntarily assumed a known risk when he continued to smoke after being warned of the danger. However, if Gilboy knowingly assumed the risk of smoking after being warned of the consequences, there remains the factual issue of comparative fault. LSA-C.C. art. 2323; Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988); Cates, supra.
Gilboy allegedly became addicted to smoking at an early age when his judgment would not have been equal to that of a mature individual. His competence at the time: to recognize the danger; to appreciate the nature and extent of the risk; and to voluntarily expose himself to that risk, are complicated factual issues. See Note, Plaintiffs' Conduct as a Defense to Claims Against Cigarette Manufacturers, 99 Harv.L.Rev. 809 at 812, 813 (1986).
Defendants contend that such dangerous instrumentalities as alcohol, handguns and assault rifles are not unreasonably dangerous per se and, therefore, cigarettes cannot be unreasonably dangerous per se. However, normal use of cigarettes is a health hazard, whereas alcohol, handguns and assault rifles are dangerous when misused. See Annotation, Products Liability: Sufficiency of Evidence to Support Product Misuse Defense in Actions Concerning Weapons and Ammunition, 59 A.L.R.4th 103 (1988).
While exposure to cigarette smoke can, to some extent, be avoided, the precise dangers have been widely disseminated only in recent years. It was not until 1966 that cigarette sales were accompanied by a mild warning: "Caution: Cigarette Smoking May Be Hazardous To Your Health." A smoker who acquired the habit which caused his cancer before that warning should qualify as a prudent consumer. See Pritchard v. Liggett & Myers Tobacco Company, 350 F.2d 479 (3d Cir.1965), cert. denied, 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475, amended, 370 F.2d 95 (3d Cir.1966) and Cipollone, supra. Although warnings of the danger of cigarette smoking have been mandated by federal law since 1966, defendants paradoxically assert that the health risks of smoking had been so widely known that there was no duty to warn prior to that time.
Warning consumers that a product is dangerous reduces but does not eliminate a manufacturer's responsibility for a product which is unreasonably dangerous per se. Halphen. Compare Roysdon v. R.J. Reynolds Tobacco Co., 849 F.2d 230 (6th Cir.1988). The adequacy of a manufacturer's warnings is a factor in assessing comparative fault.
The question of whether the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-1340 (1965), preempts the issue of adequate warning after January 1, 1966, is presently pending in the United States Supreme Court. Cipollone v. Liggett Group, Inc., 893 F.2d *1266 541 (3d Cir.1990) cert. granted ___ U.S. ___, 111 S.Ct. 1386, 113 L.Ed.2d 443, and Kotler v. American Tobacco Co., 926 F.2d 1217 (1st Cir.1990) docket no. 90-1473. The Labeling Act does not expressly preempt state tort remedies, and there is a presumption against implied preemption of state law. Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Even if there were a 1966 federal preemption of the failure to warn issue, plaintiff retains his Halphen cause of action. See Dewey, supra and Pennington, supra.
On April 1, 1970, cigarette packages were required to state: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous To Your Health." After October 12, 1985, the language became: "Surgeon General's Warning: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy." It was less than one year before Gilboy's cancer was diagnosed that he was specifically warned about lung cancer as a consequence of smoking.
Because of a continuing compromise between the congressional interest in protecting public health and the congressional interest in protecting the tobacco industry, the warnings mandated by the Labeling Act have not fully reflected the dangers of smoking cigarettes. Compare the 1967 Surgeon General's report with the 1985 warning.

CONCLUSION
Defendants are not entitled to a summary judgment. Multiple questions of material fact remain to be determined. Did smoking cigarettes cause plaintiff's lung and brain cancers? Are cigarettes unreasonably dangerous per se under the risk/utility test of Halphen? If it is established that cigarettes caused the cancers and are unreasonably dangerous per se, other factors must be weighed to apportion comparative fault. Did the manufacturers suppress health information concerning cigarettes? See Rogers v. R.J. Reynolds Tobacco Co., 761 S.W.2d 788 (Tex.App.1988). How effective were the warnings? Was Gilboy competent to assume the risk of smoking when he acquired the habit? Did addiction make Gilboy's decision to continue smoking a voluntary choice? To what extent did plaintiff voluntarily encounter the risk of lung cancer? All of these considerations affect the comparative fault of the parties. The issues must be determined at trial on the merits.
For the foregoing reasons, the summary judgment in favor of defendants is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
COLE, J., concurs in the result.
DENNIS, J., joins the opinion but prefers not to express an opinion as to whether the risks or utility of tobacco use are enormous or nil. Also, strictly speaking, the Legislature may repeal or change law but it cannot overrule or reverse decisions of the courts interpreting the law.
NOTES
[1] Judge Robert L. Lobrano of the Fourth Circuit Court of Appeal and Judge William Norris III of the Second Circuit Court of Appeal sat on this case by assignment for Justices Marcus and Lemmon, recused.
[2] The American Tobacco Company, R.J. Reynolds Tobacco Company, The Tobacco Institute, Inc., Lorillard, Inc., and K & B, Incorporated.