830 So.2d 294 (2002)
Gloria SCOTT, et al.,
v.
The AMERICAN TOBACCO CO., INC., et al.
Nos. 2002-CC-2449, 2002-CC-2452.
Supreme Court of Louisiana.
November 15, 2002.
Rehearing Denied December 4, 2002.
Herman, Herman, Katz & Cotlar, Russ Michel Herman, Stephen Jay Herman, New Orleans; Simon, Peragine, Smith & Redfearn, Robert L. Redfearn, New Orleans; Gauthier, Downing, LaBarre, Beiser & Dean, Bruce C. Dean, Deborah M. Sulzer, Metairie; Murray Law Firm, Stephen B. Murray, Sr., Stephen B. Murray Jr. New Orleans; Leger & Mestayer, Walter J. Leger, Jr., Christine L. DeSue, New Orleans; Bruno & Bruno, Joseph Michael Bruno, David S. Scalia, New Orleans; Carter *295 & Cates, Kenneth Michael Carter, New Orleans; St. Martin & Williams, Michael X. St. Martin, Houma; Fayard & Honeycutt, Calvin Clifford Fayard, Jr. Denham Springs; Baggett, McCall, Burgess, William B. Baggett, Lake Charles; Kelly, Townsend & Thomas, Donald G. Kelly, Natchitoches; Holden, Harig & Guidry, Melvin Lee "Kip" Holden; W. James Singleton, Shreveport; Usry, Weeks & Matthews, Thomas Allen Usry, New Orleans; Bencomo & Associates, Raul Ramon Bencomo, New Orleans; Edwin R. Murray & Associates, Edwin Rene Murray, New Orleans; Gertler, Gertler, Vincent & Plotkin, Mike Gertler, Louis Leopold Gertler, New Orleans; Due, Caballero, Perry, Price & Guidry, Paul H. Due', Baton Rouge; Louis Joseph Roussel, III; Sibley Law Firm, William Hugh Sibley; Evan F. Trestman, New Orleans; for Applicant (Nos. 2002-CC-2449 and 2002-CC-2452).
Adams & Reese, Scott E. Delacroix, Charles Fenner Gay, Jr., Ronald J. Sholes, Jeffrey E. Richardson, New Orleans; Chaffe, McCall, Phillips, Toler & Sarpy, LLP, Carmelite Marie Bertaut, New Orleans; Gordon, Arata, McCollam, Duplantis & Eagan, LLP, Steven William Copley, New Orleans; Middleberg, Riddle & Gianna, Dominic J. Gianna, New Orleans; Stone, Pigman, Walther, Wittmann & Hutchinson, Stephen H. Kupperman, Phillip A. Wittmann, for Respondent (Nos. 2002-CC-2449 and 2002-CC-2452).
KIMBALL, Justice.[*]
We granted certiorari in this tobacco class action litigation to determine whether the lower courts properly considered the issue of the applicability of comparative fault to plaintiffs' suit for relief in the form of a court-supervised medical monitoring and/or cessation program. Additionally, we granted certiorari to examine the validity of the trial court's amended trial plan. For the reasons that follow, we find the lower courts acted prematurely in considering the applicability of comparative fault principles to plaintiffs' claims at this point in the litigation and prior to any adjudication relating to defendants' liability for damages. Moreover, we conclude as herein discussed that Phase I of the trial should be structured to solely determine defendants' liability for all damages and any decisions regarding future Phases of this complex litigation should be withheld until such time as they become necessary and relevant.

Facts and Procedural History
As discussed in our prior decision, Scott v. American Tobacco Co., 01-2498 (La.9/25/01), 795 So.2d 1176 (Scott I), this litigation arises from a class action filed by plaintiffs against various tobacco company defendants. Specifically, plaintiffs seek the establishment of a court-supervised medical monitoring and/or cessation program on behalf of all Louisiana residents who are or were smokers of cigarettes manufactured by defendants on or before May 24, 1996, and who desire to participate in such assistance programs.
On August 2, 2002, plaintiffs filed a Motion and Incorporated Memorandum to Exclude Allegations of or Evidence Regarding Comparative Fault. The Motion asserted that principles of comparative fault were not applicable because the requested relief certified for class-wide treatment was not an "action for damages" pursuant to La. C.C. art. 2323. Subsequently, plaintiffs stipulated on the record that they would not proceed with a cause *296 of action for negligence at trial.[1] After a hearing, the trial court granted plaintiffs' motion. In its reasons for judgment, the trial court indicated that comparative fault is inapplicable to plaintiffs' theories related to defendants' intentional conduct under La. C.C. art. 2323, that plaintiffs' claim for the establishment of a medical monitoring and/or cessation program is not an action for "damages" as defined in Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98), 716 So.2d 355, and that comparative fault would be inapplicable to plaintiffs' theories of recovery under the principles set forth by this court in Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), and Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712 (La.1994). On September 20, 2002, the court of appeal granted defendants' supervisory writ application and reversed the judgment of the trial court. Relying in part on this court's decision in Gilboy v. American Tobacco Co., 582 So.2d 1263 (La.1991), the court of appeal concluded that comparative fault of all the parties, including plaintiffs, should be considered, even if the only theories asserted in Phase I of the trial involve issues of intentional conduct by defendants. Thus, the court of appeal held comparative fault principles to be applicable in this litigation.
At approximately the same time, defendants filed a Motion for Notice of Fundamental Trial Issues in Accordance with Defendants' Due Process Rights. In response, the trial court issued a judgment amending the Trial Plan. As to Phase I, the trial court's judgment stated:
In accordance with LACCP Art. 593.1, the Phase I trial shall adjudicate the liability of all of the defendants for all damages common to the class certified by this Court. The issues in the Phase I trial relating to liability for all damages will be fault and causation, namely:
1.) whether the defendants are responsible for the funding of the Court supervised program to monitor the medical condition of the class of Louisiana smokers to ascertain whether the smokers or former smokers may be suffering from diseases caused by, contributed to, or exacerbated by cigarette smoking;
2.) whether the defendants are responsible for the funding of a court supervised smoking cessation program designed to assist the class of Louisiana smokers who desire to quit smoking and to prevent relapse.
After reciting these general issues, the court enumerated numerous particularized common issues of fault and causation to be tried in Phase I. Next, addressing defenses, the trial court's judgment stated, "All defenses available to defendants shall be tried." Finally, the judgment enunciated the issues to be considered in Phase II of the trial, if necessary. Defendants applied for supervisory writs, which the court of appeal granted on October 1, 2002. The court of appeal vacated the amended pre-trial *297 order, apparently being of the belief that the trial court's order ignored the court of appeal's September 20, 2002 decision that comparative fault was applicable to plaintiffs' case.
In two separate applications, plaintiffs sought review of the court of appeal's judgments described above. This court granted certiorari and consolidated the matters. Scott v. American Tobacco Co., 02-2449 (La.10/23/02), 827 So.2d 1148 and Scott v. American Tobacco Co., 02-2452 (La.10/23/02), 827 So.2d 1149.

Discussion
In examining the various filings of the parties and the judgments of the lower courts, we have found that, not surprisingly, the issues in this complex class action have become intertwined and confused. Consequently, there is a need for the parties and the lower courts in this unique and difficult case to examine discrete issues as they become relevant and to manage this litigation in appropriate stages.
As explained above, the court of appeal vacated the trial court's amended pre-order ostensibly because it was of the opinion that, in preparing the order, the trial court ignored the court of appeal's September 20, 2002 decision regarding the applicability of comparative fault to plaintiffs' claims. We find, however, that the lower courts' rulings related to comparative fault were premature. Whether principles of comparative fault are applicable to this claim for medical monitoring and/or cessation programs and whether individual claimants' injuries were caused in part by their own conduct need not be determined until defendants' liability has been established.
Pursuant to former La. C.C.P. art. 593.1, which all parties agree applies to this case, once a class is certified, the trial court's management plan may provide for separate trials of the following issues in the following order:
(1) Liability for all damages.
(2) Determination of any item of damage common to the class and the basis for assessment thereof.
(3) Assessment of common damages on the basis determined in (2) above or on such basis as may be appropriate in the absence of any prior determination of the basis thereof.
(4) Determination and assessment of individual damages not common to the class, either in one trial or in a series of trials involving one or more members of the class.
In the instant case, we conclude that Phase I of the trial should be conducted so as to determine defendants' liability for establishing a court-supervised medical monitoring and/or cessation program. Such a trial will include the common issues of fault and causation, which can be tried on a class-wide basis, including the Bourgeois factors.[2] During Phase I, defendants will have the opportunity to present any applicable class-wide affirmative defenses.
After liability has been tried in accordance with former La. C.C.P. art. 593.1, then the trial court may formulate a plan for a subsequent phase of trial in which sub-classes might be formed and more individualized issues, such as comparative fault and prescription, might be addressed. We find a trial plan of this sort will be beneficial in handling this unique and complex class action litigation and, more importantly, is one contemplated by Louisiana *298 law as it existed at the time this action was filed. We reserve for a later day the important issue of whether comparative fault can be assessed and the effect of that assessment in cases seeking relief in the form of a court-supervised medical monitoring and/or cessation program.
Defendants have expressed concern that, based on the trial court's current order relating to the Phase II trial, they will never be afforded the opportunity to try individualized issues, including comparative fault, should an adverse verdict be rendered against them at the conclusion of the Phase I trial. Because of our admonition that the trial court decide issues only as they become relevant and our judgment vacating the amended trial plan, including its pronouncements dealing with Phase II, we reserve discussion of defendants' concerns until a later date.
In light of the above findings, we vacate the lower courts' rulings relating to the issue of comparative fault, presented to this court in application number 02-CC-2449, as premature. Additionally, as to application number 02-CC-2452, we vacate the court of appeal's judgment pertaining to the trial court's pre-trial order and the trial court's Judgment on Motion for Notice of Fundamental Trial Issues and Reasons for Judgment, which established an amended trial plan. The matter is remanded to the trial court for further proceedings consistent with this opinion. Any request for rehearing in this matter shall be filed on or before the seventh calendar day after the mailing of the notice of judgment.
VACATED and REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
VICTORY, J., concurring in part and dissenting in part, and assigns reasons.
CALOGERO, Chief Justice, concurs and assigns reasons:
Although I concur in the majority's opinion and limited disposition by which the court of appeal's judgment has been reversed, I write separately in order to express my view that the opinion does not go as far as it should, mainly because it postpones a decision on the primary issue presented to this court, concluding that the issue can be decided later. I would prefer to address and decide the pivotal issue whether the plaintiffs' entitlement to damages caused by the defendant's intentional tortious conduct can be reduced by the plaintiffs' comparative negligence.
The two decisions from the Fourth Circuit Court of Appeal challenged by the plaintiffs are based on that court's interpretation of this court's language[1] in Gilboy v. American Tobacco Co., 582 So.2d *299 1263 (La.1991) to "permit[] evidence on comparative fault of all the parties, including the plaintiffs, even if the only theories put forth in Phase I of this trial involves [sic] issues of intentional conduct by the defendants in the manufacture, labeling, and sale of cigarettes." Scott v. American Tobacco Co., 2002-C-1938 (La. Ap. 4 Cir. 9/20/02).
However, the Gilboy decision itself says absolutely nothing about whether the plaintiffs' entitlement to damages caused by the defendant's intentional tortious conduct can be reduced by the plaintiffs' comparative negligence. In fact, the Gilboy court simply stated that the plaintiffs were "claiming damages against cigarette manufacturers and a vendor." Gilboy, 582 So.2d at 1264. The only issue decided by this court in that case was whether the defendants were entitled to summary judgment because the plaintiffs "voluntarily encountered the risks associated with cigarette smoking." Id.
On the other hand, La. Civ.Code art. 2323(C) expressly states as follows: "[I]f a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced." Because the effective date of that provision is April 16, 1996, the defendants claim the rule should not be applied to this case, which was filed prior to that effective date. However, this court has specifically held that the changes reflected in Act 3 of the 1996 Extraordinary Session of the Louisiana Legislature, which amended La. Civ. Code art. 2323, "are procedural, and can be applied retroactively." Keith v. U.S. Fidelity & Guaranty Co., 96-2075, p. 7 (La.5/9/97), 694 So.2d 180, 183.[2]
Moreover, the rule established by the 1996 amendments to La. Civ.Code art. 2323 merely codified the prior existing law. Crawford, William E., Commentary: The Revision of Tort Law by the Extraordinary Session of 1996. In fact, virtually every Louisiana appellate court, including the Fourth Circuit, had applied the rule prior to 1996. See Hattori v. Peairs, 95-0144, p. 12 (La.App. 1 Cir. 10/6/95), 662 So.2d 509, 517; Broussard v. Lovelace, 610 So.2d 159, 162 (La.App. 3 Cir.1992), writ denied, 615 So.2d 343 (La.1993); Andry v. Parish of Orleans, 309 So.2d 814, 815 (La. App. 4 Cir.1975); South Texas Lloyds v. Jones, 273 So.2d 853 (La.App. 2 Cir.1973). The only generally recognized exception to the rule was assault and battery cases in which the complainant had provoked the defendant's actions. See Clark v. Burchard, 00-2750 (La.App. 4 Cir. 11/14/01), 802 So.2d 824; Robinson v. Hardy, 505 So.2d 767 (La.App. 2 Cir.1987), writ denied, 508 So.2d 825 (La.1987); Jones v. Thomas, 557 So.2d 1015 (La.App. 4 Cir.1990).
This court's decisions in Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712 and Bell v. Jet 462 So.2d 166 (La.1985), did not modify the general rule that a plaintiff's entitlement to damages caused by the defendant's intentional tortious conduct cannot be reduced by the plaintiff's comparative *300 negligence. In fact, neither of those case directly addressed the question presented by this case. In Veazey, this court found that the liability of a negligent tortfeasor could be reduced by the fault of an intentional tortfeasor in some circumstances. Two obvious distinctions exist between Veazey and the instant case: (1) Veazey involved the liability of two tortfeasors, one negligent and one intentional; and (2) Veazey does not address the comparison of victim fault with the fault of a tortfeasor of any type. In Bell, this court merely found that comparative fault principles could be applied in products liability cases under some circumstances. Again, the question of comparing the liability of an intentional tortfeasor with victim fault did not arise.
Further, even if the principles articulated in Veazey and Bell could somehow be applied to the instant case, the Court of Appeal's conclusion that comparative fault applies to the instant case is nevertheless at variance with the law. As the Court of Appeal noted, Veazey and Bell "specifically recognize that comparative fault, under certain circumstances, may apply in product liability/intentional tort cases." Scott, 02-C-1938, p. 1 (emphasis added). In both Veazey and Bell, this court held that a case-by-case analysis is necessary to determine whether application of comparative fault principles is appropriate in a given situation. Veazey, 93-2818 at 10-11; 650 So.2d at 718-719; Bell, 462 So.2d at 171-72. In both of those cases, this court found that comparative fault principles should not apply under the facts and circumstances of those cases. An important reason for that decision in Bell was this court's recognition of the following fact:
Reduction of the plaintiff's award in this type of case would only tend to defeat the basic goals of strict products liability doctrine by reducing economic incentive for product quality control and by forcing the injured individual to underwrite a loss himself which could be more efficiently distributed by the manufacturer through insurance and price adjustments.
462 So.2d at 172. Similarly, in Veazey, this court noted as follows:
[I]n the area of strict liability, though we have repeatedly held that comparative fault principles generally apply in strict liability cases involving victim fault, we have also consistently maintained that application of comparative fault principles to allocate fault between an injured plaintiff and the party with garde or custody of the property or object producing the harm in a particular case depends in part upon the court's determination of whether reducing the injured party's recovery through a comparative fault allocation will serve as an incentive for a similarly situated person to exercise care or, in contrast, operate to reduce the incentive of the owner of the thing at issue to remove the risk of harm.
93-2818 at 10, 650 So.2d at 718. The court also recognized in Veazey the following: "Because we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible." Id. at 12, 650 So.2d at 719-20.
In the instant case, the plaintiffs claim that the defendants intentionally designed, manufactured, and marketed their products in a manner that made cigarettes more harmful and more addictive, desiring that the plaintiffs would become dependent, even though they knew with substantial certainty that smokers would become dependent and suffer an increased risk of harm. Given the allegations that the defendants *301 acted intentionally in such a way as to reduce the plaintiffs' ability to make a free choice concerning their actions, this would appear to be exactly the type of case in which the application of comparative fault principles would not be appropriate under the principles enunciated in Bell and Veazey. Certainly any incentive the defendants would have to change their intentional conduct would be reduced by the application of comparative negligence principles in this case. Perhaps more importantly, this case would appear to be exactly the type of case in which a true comparison of fault would be impossible because the actions of the parties were "fundamentally different." Veazey, 93-2818 at 12; 650 So.2d at 719. Accordingly, I would go further than the majority decision (in which I concur) and address the court of appeal's finding that comparative fault principles may be applied to reduce the plaintiffs' entitlement to damages caused by the defendant's intentional tortious conduct. Were the court now addressing that issue, I would hold that comparative fault principles may not be applied for that purpose.
I would also reject the defendants' argument that La. Civ.Code art. 2323(C) does not apply to this case because the plaintiffs themselves committed intentional acts. In support of their assertion, the defendants cite Clark, 00-2750, 802 So.2d 824, in which the court made the blanket statement that La.Code of Civ. Proc. art. 2323(C) "does not apply where the plaintiff's fault is intentional in nature." 00-2750 at 15, 802 So.2d at 834. However, as noted above, the Clark case simply applies the rule that comparative fault principles do apply in battery cases when the victim intentionally provoked the attack. Because of the obvious factual distinctions, the statement in Clark does not apply in a case like this.
Second, and more importantly, my review of clearly-established principles of Louisiana law suggests to me that the plaintiffs' alleged conduct in this case does not qualify as "intentional acts," although I prefer to reserve final judgment on that issue pending review of all the evidence presented at trial. Under this court's most recent pronouncement on the subject, a party has committed an intentional act only when one of two things is true: (1) the actor "consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct"; or (2) the actor "knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." Cole v. Department of Public Safety & Corrections, 2001-2123, p. 30-31 (La.9/4/02), 825 So.2d 1134, 1140.[3]
The defendants do not allege either of these things in this case, but argue simply that their comparative fault defense is based on "evidence demonstrating plaintiffs' knowing and voluntary choices to smoke and continue smoking despite their belief that smoking was dangerous and addictive." It is well established that "mere knowledge and appreciation of a *302 risk does not constitute intent." Reeves v. Structural Preservation Systems, 98-1795, p. 9-10 (La.3/12/99), 731 So.2d 208, 213. Likewise, even gross negligence does not meet the intentional act requirement. See In re Hunter, XXXX-XXXX, p. 21 (La.8/19/02), 823 So.2d 325, 339.
For the reasons set forth above, I would prefer to answer the primary question presented by this case and find that the court of appeal erred in deciding that comparative fault principles could be applied to reduce the plaintiffs' entitlement to damages caused by the defendant's intentional tortious conduct in this case. Accordingly, I concur in the decree in the majority opinion.
VICTORY, J., concurring in part and dissenting in part.
I concur that Phase I of this trial should be conducted so as to determine defendants' liability, solely as a result of its intentional conduct as alleged by plaintiffs, for establishing a court-supervised medical monitoring and/or cessation program. I further concur that Phase I of this trial will include the common issues of fault and causation, and that defendants will have the opportunity to present any applicable class-wide defenses, including affirmative defenses.
Among other defenses, defendants contend that plaintiffs voluntarily chose to smoke with the knowledge and the personal belief that smoking caused disease, was deadly and addictive. In fact, since 1966, every pack of cigarettes contained the warning: "Caution: Cigarette Smoking May Be Hazardous To Your Health." On April 1, 1970, the warning on cigarette packages was changed to: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous To Your Health." Since 1985, every package of cigarettes has contained the following warning: "SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema And May Complicate Pregnancy." These are the very diseases for which plaintiffs now seek medical monitoring costs as a class. Clearly, evidence that the plaintiffs, as a class, were warned that smoking caused these deadly diseases and chose to smoke in spite of this danger is relevant to the common issues of fault and causation and constitutes an applicable class-wide defense under this Court's per curiam opinion.
By way of dissent, it is my view that the Court should rule at this time that defendants can present, at Phase II, evidence of an individual's comparative fault. Contrary to plaintiffs' assertions, La. C.C. art. 2323(C)[1] does not apply to this case to exclude evidence of plaintiffs' fault because their "fault" in voluntarily choosing to smoke in spite of knowledge of the risks is not negligent or accidental, but is intentional. La. C.C. art. 2323(C) applies only when a plaintiff's contributory fault consists of negligence, not when a plaintiff's fault is intentional in nature. See Clark v. Burchard, 00-2750 (La.App. 4 Cir. 11/14/01), 802 So.2d 824; Landry v. Bellanger, 00-2029 (La.App. 1 Cir. 3/28/02), 813 So.2d 598. In addition, contrary to Chief Justice Calogero's concurring opinion, plaintiffs' fault does not have to meet the definition of an "intentional tort," in order to fall outside the exclusionary language of La. C.C. art. 2323(C). Defendants have not alleged, nor do they have to *303 prove, that plaintiffs committed an "intentional tort" by voluntarily choosing to smoke cigarettes in spite of the well-known risks, only that their conduct was intentional, and not accidental or involuntary.
Further, under the LPLA and Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986), which claims are presented in this case, a plaintiff's fault can be compared with a defendant's strict liability. In Gilboy v. American Tobacco Co., 582 So.2d 1263 (La.1991), this Court expressly held that comparative fault was available to a tobacco company where the plaintiff asserted a Halphen unreasonably dangerous per se claim, started smoking as a minor, claimed to be addicted, and claimed defendants suppressed information about smokingsome of the identical claims asserted by plaintiffs here. This Court unequivocally held that comparative fault and other issues concerning the choices plaintiffs make about smoking are for the jury to consider, and "must be determined at trial on the merits." 582 So.2d at 1265-66. Barring all evidence of comparative faultand thus plaintiffs' own actsis not permitted by Gilboy. Further, comparative fault is routinely applied to LPLA claims. See e.g., Kampen v. American Isuzu Motors, 157 F.3d 306, 316 (5th Cir.1998); Tolliver v. Naor, 99-0586, 2001 WL 1356264 (E.D.La.11/2/01); Bayerische Motoren Werke, A.G., 96-2034, 1997 WL 106716 (E.D.La.3/11/97); Simon v. American Crescent Elevator Co., 99-2058 (La. 4 Cir. 4/26/00), 767 So.2d 64, writ denied, 00-1974 (La.11/13/00), 773 So.2d 726; and others.
In addition, the holding of Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712 does not preclude such a result. The issue in Veazey was whether the defendant apartment complex could reduce its liability to the plaintiff by assessing the comparative fault of the plaintiff's rapist. Policy considerations led this Court to find that the defendant "should not be allowed to benefit at the innocent plaintiff's expense by an allocation of fault to the intentional tortfeasor under comparative fault principles." 650 So.2d at 719-20. Here, defendants argue that plaintiffs' intentional conduct constitutes relevant evidence of comparative fault between plaintiffs and defendants. As noted expressly by this Court the Veazey holding does not apply to such a situation:
We therefore need not, and do not, express any opinion in this case as to whether, or in what situations, if any, victim fault should be compared to the fault of an intentional tortfeasor.
Id. at 719, n. 10.
Finally, in Banks v. New York Life Ins. Co., 98-0551 (La.7/22/99), 737 So.2d 1275, this Court held that comparative fault can be used as a defense in an intentional tort case involving claims of fraud and misrepresentations, claims which are also alleged in this case. In Banks, this Court held that defendants could raise comparative fault based on plaintiffs' failure to properly review a life insurance policy, even though defendants allegedly deceived plaintiffs regarding the benefits of the policy. This Court explained that:
The conduct of many of the named plaintiffs in this case demonstrates their own comparative fault could reduce or even eliminate the potential for recovery. Some were sophisticated life insurance buyers, while others admitted they failed to read their policies and pay attention to the illustrations given to them by their agents.
737 So.2d at 1283. In fact, the comparative fault of the plaintiffs was one factor the Court relied on in decertifying the class because there were too many individual issues affecting defendants' liability to *304 find that common issues predominated. 737 So.2d at 1283.
For all of the above reasons, I respectfully concur in part and dissent in part.
NOTES
[*] Retired Judge Robert J. Klees, assigned as Justice ad hoc, sitting for Associate Justice Chet D. Traylor, recused.
[1] According to plaintiffs, they intend to pursue the following theories of liability during the Phase I trial:

(1) the intentional breach of a voluntarily assumed duty not to market cigarettes to children;
(2) an "intentional" (for Article 2323(C) purposes) design defect claim, under both Halphen and the LPLA, for the manufacture of an unreasonably dangerous product (with a desire to create nicotine dependence and/or addiction, and/or with knowledge to a degree of substantial certainty that the product, when used as intended, will result in dependence and/or increased risk of developing a latent illness or disease);
(3) a claim under Halphen for the manufacture of products that are unreasonably dangerous per se;
(4) fraud; and
(5) conspiracy.
[2] In this case, the trial court appears to be of the belief that La. C.C. art. 2315, as amended by Act No. 989 of 1999, is applicable to plaintiffs' claims. Because the issue is not before us at this time, we express no opinion as to the applicability of the amended version of Article 2315 to this litigation.
[1] The court of appeal cited the following language from Gilboy:

Defendants are not entitled to a summary judgment. Multiple questions of material fact remain to be determined. Did smoking cigarettes cause plaintiff's lung and brain cancers? Are cigarettes unreasonably dangerous per se under the risk/utility test of Halphen [v. Johns-Mansville Sales Corp., 484 So.2d 110 (La.1986)]? If it is established that cigarettes caused the cancers and are unreasonably dangerous per se, other factors must be weighed to apportion comparative fault. Did the manufacturers suppress health information concerning cigarettes? See Rogers v. R.J. Reynolds Tobacco Co., 761 S.W.2d 788 (Tex.App.1988). How effective were the warnings? Was Gilboy competent to assume the risk of smoking when he acquired the habit? Did addiction make Gilboy's decision to continue smoking a voluntary choice? To what extent did plaintiff voluntarily encounter the risk of lung cancer? All of these considerations affect the comparative fault of the parties. The issues must be determined at trial on the merits.
582 So.2d at 1265-66.
[2] Defendants incorrectly cite Aucoin v. State through DOTD, 97-1938 (La.4/24/98), 712 So.2d 62, claiming that this court found in that case that the 1996 amendment to La. Code of Civ. Proc. art. 2323(B) was substantive and applies only prospectively. However, the Aucoin case dealt with La.Code of Civ. Proc. art. 2324(B). In fact, the Aucoin decision notes specifically that "[t]his court has already determined that amended article 2323 was merely procedural legislation," meaning that "it was to be applied retroactively." Id. at 9, 712 So.2d at 68. The fact that this court did not distinguish between the subsections of amended La. Civ.Code art. 2323 has been expressly recognized in Johnson v. First Nat. Bank, 2000-870, p. 34 (La.App. 3 Cir. 6/20/01), 792 So.2d 33, 57.
[3] Like most of the Louisiana jurisprudence considering whether a party has committed an intentional tort, Cole involved an attempt by an employee to avoid the exclusivity provisions of the Louisiana Workers' Compensation Act, as allowed by La Rev. Stat. 23:1032(B), by asserting that his injury was caused by his employer's intentional, as opposed to negligent, acts. However, this court noted in Reeves v. Structural Preservation Systems, 98-1795 (La.3/2/99), 731 So.2d 208, that an "intentional act" for purposes of La. Rev.Stat. 23:1032(B) means the same as "intentional tort" in reference to civil liability. See Cole, 2001-2123 at p. 30, 825 So.2d at 1140. Thus, the principles enunciated in Cole and other workers' compensation cases apply to determination of whether the plaintiffs in this case committed intentional tortious acts.
[1] La. C.C. art. 2323(C) provides:

Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.